# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Snow*, 2012 IL App (4th) 110415

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES C. SNOW, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0415 |
| Filed<br>Supplemental opinion filed on denial of rehearing | January 11, 2012<br><br><br>March 5, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In postconviction proceedings arising from defendant's 2001 conviction for first degree murder, the appellate court affirmed the dismissal of defendant's amended postconviction petition and the denial of his motion for ballistics testing, since his actual-innocence claim was almost entirely based on evidence that was not newly discovered, defendant failed to prove his claims of ineffective assistance of counsel were not barred by *res judicata*, he forfeited the issues related to his motion to supplement his petition and his motion for discovery, and his motion for ballistics testing was properly denied without a hearing where defendant's claim that testing could show that some unknown weapon used in another offense could identify the "true perpetrator" of his crime was wholly speculative. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 99-CF-1016; the Hon. Alesia A. McMillen, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Jon Loevy, Russell Ainsworth, Gayle Horn, Tara Thompson (argued), and Elizabeth Wang, all of University of Chicago Law School, of Chicago, for appellant. |
| | William A. Yoder, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and Anastacia R. Brooks (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE TURNER delivered the judgment of the court, with opinion. |
| | Justices Appleton and Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant, James C. Snow, appeals the McLean County circuit court's (1) dismissal of his amended postconviction petition at the second-stage of the proceedings, (2) denial of his March 2011 motion to supplement the record, and (3) denial of his motion for ballistics testing. On appeal, defendant only challenges the court's dismissal of the claims in his amended postconviction petition and the denial of his motion for ballistics testing. We affirm.

¶ 2                                    I. BACKGROUND
¶ 3     In September 1999, a grand jury charged defendant with three counts of first degree murder (Ill. Rev. Stat. 1991, ch. 38, ¶¶ 9-1(a)(1), (a)(2), (a)(3)) for the death of William Little on March 31, 1991. Defendant's January 2001 trial took place over the course of nine days, and the parties presented testimony from 56 witnesses. Defendant was represented by Frank Picl and Patrick Riley and the State was represented by then McLean County State's Attorney Charles Reynard and assistant Teena Griffin. The jury found defendant guilty of first degree murder on all three counts. Defendant filed a posttrial motion and a *pro se* motion asserting he was denied effective assistance of trial counsel. After an April 2001 hearing, the trial court concluded defendant received effective assistance of counsel and declined to appoint new counsel for defendant. In May 2001, the court denied defendant's posttrial motion and sentenced defendant to natural life in prison. Defendant then filed a motion to reconsider his sentence, which the court denied. Defendant appealed his convictions and sentences.

¶ 4     On appeal, defendant argued (1) the trial court erred by not appointing him new counsel for a hearing on his ineffective-assistance-of-counsel claims, (2) the court erred by not allowing him to present expert testimony regarding eyewitness identification, (3) the court erred in admitting several pieces of evidence, (4) the prosecutor made several improper remarks during her closing arguments, (5) the court erred in giving an accountability instruction, (6) the State failed to prove him guilty beyond a reasonable doubt, (7) he was denied effective assistance of counsel, and (8) the court erred in sentencing him to natural life in prison. This court vacated defendant's convictions and sentences on the knowing-murder and felony-murder counts because defendant could only stand convicted of one murder for Little's death (see *People v. Cardona*, 158 Ill. 2d 403, 412, 634 N.E.2d 720, 724 (1994)) and affirmed defendant's conviction and sentence for intentional murder in all other respects. *People v. Snow*, No. 4-01-0435 (Aug. 20, 2004) (unpublished order under Supreme Court Rule 23). The Supreme Court of Illinois denied defendant's petition for leave to appeal. *People v. Snow*, 212 Ill. 2d 549, 824 N.E.2d 290 (2004).

¶ 5     In May 2004, defendant filed his *pro se* postconviction petition. The next month, he filed a *pro se* supplemental amendment to his petition. In February 2006, defendant filed a *pro se* second supplemental amendment to his postconviction petition. The next month, defendant's counsel filed an amended postconviction petition. In January 2008, defendant again filed a *pro se* amended postconviction petition. In April 2008, the Exoneration Project entered its appearance on defendant's behalf.

¶ 6     In January 2010, the Exoneration Project filed a motion for discovery and a 53-page amended petition for postconviction relief. Attached to the amended petition were 32 exhibits. The amended motion did not indicate it incorporated or is a supplement to defendant's other postconviction petitions. The next month, defendant filed a motion to transfer venue, noting former McLean County State's Attorney Reynard had become a circuit court judge and would likely be a witness at an evidentiary hearing. In April 2010, the State filed a motion to dismiss defendant's amended postconviction petition. Thereafter, in response to defendant's motion to transfer venue, Judge Alesia A. McMillen of Schuyler County was assigned to hear this case. In August 2010, defendant filed (1) a response to the State's motion to dismiss and (2) a motion to supplement the record with two additional exhibits. On November 5, 2010, the trial court held a hearing on the State's motion to dismiss. By agreement of the parties, the court allowed defendant's August 2010 motion to supplement. The court took the motion to dismiss under advisement. The parties both later filed supplemental responses addressing the matters raised by the court at the hearing on the State's motion to dismiss. In March 2011, defendant filed another motion to supplement the record with newly discovered evidence, consisting of three more exhibits. He also filed a motion for postconviction ballistics testing under section 116-3 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/116-3 (West 2010)). On April 21, 2011, the trial court filed its order, granting the State's motion to dismiss defendant's amended postconviction petition. The court's dismissal mooted defendant's motion for discovery, which the court never heard. On May 9, 2011, the court filed an order, denying defendant's March 2011 motion to supplement the record and motion for ballistics testing.

¶ 7     On May 16, 2011, defendant filed his notice of appeal in sufficient compliance with

-3-

Illinois Supreme Court Rule 606 (eff. Mar. 20, 2009). See Ill. S. Ct. R. 651(d) (eff. Dec. 1, 1984) (providing the supreme court rules governing criminal appeals apply to appeals in postconviction proceedings). The notice of appeal stated defendant was appealing the "[w]ritten rulings of April 19, 2011 and May 9, 2011, denying [defendant]'s post-conviction petition, motions to supplement, and motions for ballistic testing." Accordingly, this court has jurisdiction under Illinois Supreme Court Rule 651(a) (eff. Dec. 1, 1984).

¶ 8                                    II. ANALYSIS

¶ 9                              A. Postconviction Petition

¶ 10    Defendant first asserts the trial court erred by dismissing his amended postconviction petition without an evidentiary hearing. In support of his contention, defendant specifically contends the court applied the wrong standard of review and erred by dismissing his (1) actual-innocence claim; (2) ineffective-assistance-of-counsel claim; (3) claim under *Brady v. Maryland*, 373 U.S. 83 (1963); (4) other due-process claims; and (5) cumulative-error claim.

¶ 11    Initially, we remind defendant, the appellant in this case, of the briefing requirements on appeal. As this court has noted in a second-stage dismissal case, Illinois Supreme Court Rule 341(h)(7) provides, " '[p]oints not argued [in the appellant's brief] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.' " *People v. Borello*, 389 Ill. App. 3d 985, 998, 906 N.E.2d 1250, 1261 (2009) (quoting Ill. S. Ct. R. 341(h)(7) (eff. Sept. 1, 2006)). Additionally, Rule 341(h)(7) requires the contentions raised in the argument section of the brief to be supported by citation to legal authority and the pages of the record relied on, not the appendix. Ill. S. Ct. R. 341(h)(7) (eff. Sept. 1, 2006). The failure to do so results in forfeiture of the argument. *Byrd v. Hamer*, 408 Ill. App. 3d 467, 487, 943 N.E.2d 115, 134 (2011). Moreover, this court is not a depository into which the appellant can dump his burden of argument and research. See *Barth v. State Farm Fire & Casualty Co.*, 371 Ill. App. 3d 498, 507, 867 N.E.2d 1109, 1117 (2007). Accordingly, we only will address the issues and supporting evidence properly raised in defendant's brief.

¶ 12                              1. *Standard of Review*

¶ 13    The Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/art. 122 (West 2004)) provides a remedy for defendants who have suffered a substantial violation of constitutional rights at trial. *People v. Pendleton*, 223 Ill. 2d 458, 471, 861 N.E.2d 999, 1007 (2006). In cases not involving the death penalty, the Postconviction Act sets forth three stages of proceedings. *Pendleton*, 223 Ill. 2d at 471-72, 861 N.E.2d at 1007.

¶ 14    At the first stage, the trial court independently reviews the defendant's postconviction petition and determines whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2004). If it finds the petition is frivolous or patently without merit, the court must dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2004). If the court does not dismiss the petition, it proceeds to the second stage, where, if necessary, the court appoints the defendant counsel. *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1007. Defense counsel may amend the defendant's petition to ensure his or her contentions are adequately

-4-

presented. *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1007. Also, at the second stage, the State may file a motion to dismiss the defendant's petition or an answer to it. *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1008. If the State does not file a motion to dismiss or the court denies such a motion, the petition advances to the third stage, wherein the court holds a hearing at which the defendant may present evidence in support of his or her petition. *Pendleton*, 223 Ill. 2d at 472-73, 861 N.E.2d at 1008. In this case, the State did file a motion to dismiss, and the court granted that motion.

¶ 15    With the second-stage of the postconviction proceedings, the trial court is concerned merely with determining whether the petition's allegations sufficiently demonstrate a constitutional infirmity that would necessitate relief under the Postconviction Act. *People v. Coleman*, 183 Ill. 2d 366, 380, 701 N.E.2d 1063, 1071 (1998). At this stage, "the defendant bears the burden of making a substantial showing of a constitutional violation" and "all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true." *Pendleton*, 223 Ill. 2d at 473, 861 N.E.2d at 1008. The court reviews the petition's factual sufficiency as well as its legal sufficiency in light of the trial court record and applicable law. *People v. Alberts*, 383 Ill. App. 3d 374, 377, 890 N.E.2d 1208, 1212 (2008). However, our supreme court has emphasized that, when a petitioner's claims are based upon matters outside the record, the Postconviction Act does not intend such claims be adjudicated on the pleadings. *People v. Simms*, 192 Ill. 2d 348, 360, 736 N.E.2d 1092, 1105 (2000). At a dismissal hearing, the court is prohibited from engaging in any fact finding. *Coleman*, 183 Ill. 2d at 380-81, 701 N.E.2d at 1071. Thus, the dismissal of a postconviction petition at the second stage is warranted only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation. *Coleman*, 183 Ill. 2d at 382, 701 N.E.2d at 1072. We review *de novo* the trial court's dismissal of a postconviction petition at the second stage. *Pendleton*, 223 Ill. 2d at 473, 861 N.E.2d at 1008.

¶ 16    Defendant contends the trial court applied the wrong standard in reviewing his amended postconviction petition as it found his evidence was not credible and asserts the court's dismissal should be reversed on that reason alone. However, with a first-stage dismissal, the Second District has found a trial court's utilization of the wrong standard is not a basis for reversing the dismissal. *People v. Dominguez*, 366 Ill. App. 3d 468, 473, 851 N.E.2d 894, 900 (2006); but *cf. People v. Newbolds*, 364 Ill. App. 3d 672, 679, 847 N.E.2d 614, 621 (2006) (finding the court's use of the improper standard at the first stage was a basis for reversing its dismissal of the postconviction petition). The *Dominguez* court explained that, since a reviewing court may affirm on any proper ground, a procedurally proper summary dismissal based on an improper ground may still be affirmed. *Dominguez*, 366 Ill. App. 3d at 473, 851 N.E.2d at 900. Thus, the reviewing court should apply the proper standard and "affirm if, in accordance with that standard, the summary dismissal is justified." *Dominguez*, 366 Ill. App. 3d at 473, 851 N.E.2d at 900.

¶ 17    We find the rationale of *Dominguez* well reasoned and also applicable to second-stage dismissals since a reviewing court may affirm a trial court's dismissal at the second stage on any grounds substantiated by the record, regardless of the trial court's reasoning. See *People v. Demitro*, 406 Ill. App. 3d 954, 956, 942 N.E.2d 20, 22 (2010). Our *de novo* review

utilizing the proper standard addresses the trial court's use of an improper one if it did so. Thus, we conclude the use of an improper standard in analyzing a postconviction petition at the second stage does not itself serve as a basis for reversal, and we need not address whether the trial court used the wrong standard.

¶ 18                                     2. *Actual Innocence*

¶ 19       Defendant next argues the trial court improperly dismissed his actual-innocence claim. The State disagrees.

¶ 20       A freestanding claim of actual innocence is cognizable under the Postconviction Act because a wrongful conviction of an innocent person violates due process under the Illinois Constitution. *People v. Barnslater*, 373 Ill. App. 3d 512, 519, 869 N.E.2d 293, 299 (2007). Such a claim must be "based on newly discovered, material, and noncumulative evidence that the defendant is innocent of the crime for which he has been tried, convicted, and sentenced." *People v. Harris*, 206 Ill. 2d 293, 301, 794 N.E.2d 181, 187 (2002). Moreover, an actual-innocence claim only entitles a defendant to relief when "the evidence is of such a conclusive character that it would probably change the result of retrial." *Harris*, 206 Ill. 2d at 301, 794 N.E.2d at 188.

¶ 21       Since the trial court found almost all of defendant's evidence supporting an actual-innocence claim was not newly discovered evidence, we begin our analysis there. With an actual-innocence claim, newly discovered evidence is defined as "evidence that was unavailable at trial and could not have been discovered sooner through due diligence." *Harris*, 206 Ill. 2d at 301, 794 N.E.2d at 187. The defendant bears the burden of showing no lack of due diligence on his or her part. See *Barnslater*, 373 Ill. App. 3d at 525, 869 N.E.2d at 304. Moreover, if the evidence was available at a prior posttrial proceeding, the evidence is also not newly discovered evidence. See *People v. English*, 403 Ill. App. 3d 121, 133, 933 N.E.2d 366, 379 (2010) (finding the evidence was not newly discovered evidence where the evidence was available at trial and when the initial postconviction petition was filed). Evidence is also not newly discovered when the evidence "presents facts already known to a defendant at or prior to trial, though the source of these facts may have been unknown, unavailable or uncooperative." *People v. Collier*, 387 Ill. App. 3d 630, 637, 900 N.E.2d 396, 403 (2008).

¶ 22       Despite the requirement a defendant must show due diligence in the discovery of the supporting evidence, defendant's amended postconviction petition does not assert any due diligence in discovering the evidence supporting defendant's actual-innocence claim. Defendant simply suggests the evidence is new because it was not made part of the record during his trial. On its face, most of defendant's supporting evidence would have been available at defendant's trial or direct appeal with the exercise of due diligence. The only supporting material clearly after defendant's trial and direct appeal are the facts and rulings in *People v. Beaman*, 229 Ill. 2d 56, 890 N.E.2d 500 (2008), and *People v. Drew*, No. 4-08-0011 (Dec. 4, 2008) (unpublished order under Illinois Supreme Court Rule 23).

¶ 23       In his appellate brief, defendant suggests recantations are an exception to the newly discovered evidence requirement. See *Barnslater*, 373 Ill. App. 3d at 524, 869 N.E.2d at 304.

A defendant may present a witness's recantation as newly discovered evidence, even though the defendant knew the witness had perjured himself or herself. *Barnslater*, 373 Ill. App. 3d at 524, 869 N.E.2d at 304. However, the exception will not apply "if the defendant had evidence available at the time of trial to demonstrate that the witness was lying." *Barnslater*, 373 Ill. App. 3d at 524, 869 N.E.2d at 304. Thus, the defendant has the burden of showing other evidence of the lying could not have been discovered before trial with due diligence. See *Barnslater*, 373 Ill. App. 3d at 525, 869 N.E.2d at 304. While defendant cites *Barnslater*, he does not address the fact the recantation exception does not apply to all recantations. Defendant also does not address the due-diligence requirement with regard to the recantations in either his petition or his brief. Due to defendant's failure to plead and argue in his brief due diligence, defendant has failed to meet his burden of showing the recantations were newly discovered evidence.

¶ 24 Besides the recantations, the only other evidence for which defendant attempts to meet the newly discovered evidence requirement on appeal is Jeffery Pelo's and Carlos Luna's affidavits. Thus, we specifically address those two affidavits.

¶ 25 Defendant contends Pelo's affidavit supports his actual-innocence claim because it demonstrates Danny Martinez could not have seen defendant exiting the gas station because, given the time line described by Pelo and Martinez, Pelo would have also seen defendant exit the gas station. Defendant argues it is "new" evidence because it is not clear from any of Pelo's prior statements what his testimony would be and the State told him to keep his opinion out of the trial testimony. However, in a March 3, 1999, interview of Pelo, Pelo makes no mention of anyone exiting the gas station after his arrival at the scene. Additionally, in his affidavit, Pelo, a trial witness, stated he expected defense counsel to bring out the fact he did not see anyone exit the gas station. Clearly, Pelo's testimony about not seeing anyone leave the gas station was available at trial. Accordingly, it is not newly discovered evidence.

¶ 26 Defendant contends Luna's affidavit shows Luna was unsure he identified the right person, unsure he could identify the face of the person he saw, and identified defendant because (1) he "best fit the description" and (2) "[a]s a 14 year old I thought the police had caught the right person." Defendant argues it is new evidence because it provides new information about the strength of Luna's identification. However, the information in the affidavit is similar to Luna's trial testimony and thus is not newly discovered evidence. At trial, Luna, who was then 24 years old, testified that, at the lineup, he picked number six (defendant) because he imagined every one of the men in the lineup "doing it" and "he was the one that fit the image" of the man he saw on the night of the murder. Luna told the officer, "I think he is the person." Thus, Luna's statement defendant "best fit the description" and Luna's doubt in making the identification is not different from his trial testimony. Moreover, at trial, Luna described the man's race, height, and clothing but was unsure as to his hair color. In his testimony, Luna never described any distinct facial features of the man he saw. Accordingly, Luna's statement he was unsure he could identify the face of the person is similar to his trial testimony. As to Luna's statement regarding his thoughts as a 14-year-old boy about the police catching the right person, that statement is contradicted by the record. In the June 1991 lineup, Luna identified number six (defendant) as the man he saw

leaving the gas station. The record contains no evidence the police informed Luna number six had been arrested for Little's murder or was the prime suspect for the murder. In fact, defendant was not charged with the murder until eight years after the lineup, and the other eyewitnesses did not identify defendant in the lineup. Further, Luna did not identify defendant in court when he testified as a 24-year-old man. Additionally, defense counsel questioned Luna about his age and his distance from the man he saw the night of the murder. Thus, Luna's affidavit is also not newly discovered evidence.

¶ 27    Accordingly, since due diligence was not addressed at all in defendant's amended postconviction petition and in his brief, the only supporting materials meeting the newly discovered evidence requirement are *Beaman* and *Drew* because those rulings were clearly not available until after defendant's trial and direct appeal. However, defendant does not cite those cases in the argument section of his brief, and the cases standing alone are not material to defendant's case. Thus, we find the trial court properly dismissed defendant's actual-innocence claim.

¶ 28                                      3. *Ineffective Assistance of Counsel*

¶ 29    On appeal, defendant asserts 12 reasons why he was denied effective assistance of trial counsel. The State asserted in its motion to dismiss this issue was barred by the doctrine of *res judicata*, and the trial court agreed.

¶ 30    Under the doctrine of *res judicata*, any issues the court considered on direct appeal are barred from being addressed in a postconviction proceeding. *People v. Ligon*, 239 Ill. 2d 94, 103, 940 N.E.2d 1067, 1073 (2010). With ineffective-assistance-of-counsel claims, our supreme court has also applied *res judicata* when the issue of ineffectiveness of trial counsel has already been addressed on direct appeal and the postconviction petition added "somewhat different allegations of incompetence." *People v. Albanese*, 125 Ill. 2d 100, 105, 531 N.E.2d 17, 19 (1988); see also *People v. Kokoraleis*, 159 Ill. 2d 325, 328, 637 N.E.2d 1015, 1017 (1994) (citing the aforementioned language from *Albanese*). Moreover, issues that the court could have considered on direct appeal are deemed waived. *Ligon*, 239 Ill. 2d at 103, 940 N.E.2d at 1073. Our supreme court has found the following three exceptions to the doctrines of *res judicata* and waiver: " 'where fundamental fairness so requires; where the alleged waiver stems from the incompetence of appellate counsel; or where facts relating to the claim do not appear on the face of the original appellate record.' " *People v. Pitsonbarger*, 205 Ill. 2d 444, 458, 793 N.E.2d 609, 620 (2002) (quoting *People v. Mahaffey*, 194 Ill. 2d 154, 171, 742 N.E.2d 251, 261 (2000)). Additionally, to the extent defendant suggests *res judicata* is an issue that needs to be addressed at the third stage of the proceedings, our supreme court has held trial courts may summarily dismiss postconviction petitions at the first stage of the proceedings based on both *res judicata* and waiver because, *inter alia*, they are inherently legal determinations. *People v. Blair*, 215 Ill. 2d 427, 442, 445, 831 N.E.2d 604, 614-15 (2005).

¶ 31    In his appellate brief, defendant argues the "bulk" of his ineffective-assistance-of-counsel claims were not raised on direct appeal, and thus *res judicata* does not apply to them. He further argues claims based on evidence outside the trial record are not barred by *res*

*judicata*, and if he waived any claims, he was denied ineffective assistance of appellate counsel. However, he does not explain which of the 12 claims of ineffective assistance of counsel survive *res judicata*. Further, defendant asserts that, while he raised issues regarding witnesses in his posttrial motions, he did not receive a hearing under *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), and had no opportunity to put on the record evidence from these witnesses that supported his ineffective-assistance-of-counsel claim. That assertion is completely contradicted by the record and our order on direct appeal. See *Snow*, slip order at 7-11. On April 5, 2001, the trial court held a hearing on defendant's request to have his trial attorneys discharged before sentencing. As we stated in our prior order, "the trial court thoroughly questioned defendant, his two trial attorneys, and the prosecutor as to each allegation, including almost all of the 20 plus alleged impeachment witnesses." *Snow*, slip order at 9-10. Defendant's attorneys explained their trial strategy as to impeachment witnesses, and Picl's alcohol consumption was addressed. Defendant was allowed to state the testimony his alleged impeachment witnesses would have given. Those issues were again raised on direct appeal and addressed by this court. See *Snow*, slip order at 7-11.

¶ 32    Due to the fact ineffective assistance of counsel has already been addressed by this court and a record on the issue established, *res judicata* is not an issue that can be summarily addressed as defendant attempts to do in his brief. Defendant fails to provide any real analysis on this issue, and it is not the job of this court to bear defendant's burden of argument. Accordingly, we find defendant failed to prove his claims were not barred by *res judicata* due to his lack of argument, and thus the trial court properly dismissed this issue as well.

¶ 33                                          4. *Brady* Claim

¶ 34    In his brief, defendant asserts *Brady* violations occurred with respect to the following trial witnesses: Pelo, Jody Winkler, Kevin Schaal, Bruce Roland, and Steven Scheel.

¶ 35    In *Brady*, 373 U.S. at 87, the United States Supreme Court held an accused's due-process rights are violated when the prosecution suppresses evidence that is both favorable to the accused and material either to guilt or punishment. Thus, for defendant to obtain a new trial under *Brady*, he must show (1) the State suppressed evidence and that evidence was (2) favorable to him and (3) material to his guilt or punishment. A *Brady* claim may arise in the following three circumstances: (1) where previously undisclosed evidence reveals the prosecution introduced trial testimony it knew or should have known was perjured, (2) where the State fails to comply with a defense request for disclosure of some specific exculpatory evidence, and (3) where the State fails to voluntarily give the defense exculpatory evidence never requested or requested only in a general manner. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). In addition to exculpatory evidence, impeachment evidence falls within the *Brady* rule. *United States v. Bagley*, 473 U.S. 667, 676 (1985).

¶ 36    In the first circumstance, the conviction must be set aside if any reasonable likelihood exists that the false testimony could have affected the jury's judgment. *Kyles*, 514 U.S. at 433 n.7. In the last two circumstances, favorable evidence is material " 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding

would have been different.' " *Kyles*, 514 U.S. at 433-34 (quoting *Bagley*, 473 U.S. at 682 (opinion of Blackmun, J., joined by O'Connor, J.)). A "reasonable probability" of a different result exists when the State's evidentiary suppression " 'undermines confidence in the outcome of the trial.' " *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678).

¶ 37 In assessing materiality, we must keep in mind (1) it does not require a demonstration by a preponderance of the evidence that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal; (2) the focus is on whether, in the absence of the undisclosed information, the defendant received a fair trial, which is a trial resulting in a verdict worthy of confidence; (3) it does not require the defendant to demonstrate that, "after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict"; and (4) it is defined "in terms of suppressed evidence considered collectively, not item by item." *Kyles*, 514 U.S. at 434-36.

¶ 38 As to Pelo, defendant misrepresents what Pelo stated in his affidavit. The prosecutor stated she was not asking Pelo to lie but asking him only to answer the questions she asked. Pelo further stated that, if defense counsel had asked him additional questions about what happened that night, he would have testified he did not see anyone leave the gas station. That information is consistent with Pelo's statement in the 1999 police interview, which defendant does not allege was not part of pretrial discovery. Pelo's not seeing anyone leave the gas station after his arrival did not come out due to defense counsel's cross-examination, not the State's failure to disclose exculpatory evidence. Accordingly, a *Brady* violation did not occur in relation to Pelo.

¶ 39 Defendant alleges Winkler received a deal from the State despite his testimony to the contrary. Defendant attached sentencing documents to his postconviction petition. Those documents show Winkler pleaded guilty to forgery on January 28, 2000, pursuant to a plea agreement. Winkler received a 4-year sentence when he was eligible for a sentence of up to 10 years. Defendant only questions the length of Winkler's sentence and cites nothing connecting Winkler's sentence to his testimony in this case. Moreover, defendant does not refute the State's argument Winkler's plea agreement was public information. "[W]hen the information is readily available to the defense from another source, there simply is nothing for the government to 'disclose.' " *Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007). Accordingly, defendant has not shown the State failed to disclose any information related to Winkler.

¶ 40 The same is true for the July 2000 motion for a downward sentencing departure in Schaal's federal prosecution. The State argues it was public information, and thus the information contained in it did not have to be disclosed. Defendant again does not respond to this argument in his reply brief. Thus, defendant has again failed to demonstrate a *Brady* violation.

¶ 41 In his brief, defendant simply notes that, at the time of defendant's trial, sentencing records for Roland show he had several pending felony considerations, for which he seemed to receive "light sentences and special considerations." However, " ' "[t]he government is free to reward witnesses for their cooperation with favorable treatment in pending criminal cases without disclosing to the defendant its intention to do so, *provided* that it does not

-10-

promise anything to the witness prior to the testimony.' ' [Citation.]" (Emphasis in original.) *Akrawi v. Booker*, 572 F.3d 252, 263 (6th Cir. 2009). On appeal, defendant just highlights favorable considerations and does not allege a promise by the State before Roland testified. Defendant has again not shown a *Brady* violation.

¶ 42　　　Regarding Scheel, defendant asserts the State failed to disclose it coached Scheel's testimony by giving him details. Those details concern what defendant was wearing at the party where defendant confessed to Scheel he killed Little. The State argues Larry Biela's affidavit, which is the only evidence of the State's coaching Scheel, is improper hearsay. See *People v. Morales*, 339 Ill. App. 3d 554, 565, 791 N.E.2d 1122, 1132 (2003). Defendant argues that is the best evidence he has at this point. Our supreme court has yet to decide this issue. See *People v. Mitchell*, 189 Ill. 2d 312, 341, 727 N.E.2d 254, 271 (2000) ("Assuming, without deciding, that one can obtain an evidentiary hearing based upon inadmissable hearsay evidence, we find defendant's argument to be meritless."). Thus, we decline to find defendant failed to properly allege a nondisclosure related to Scheel because the allegation was based on a hearsay affidavit. The fact the State coached one of its witnesses is favorable to defendant, and thus we address whether the evidence was material to defendant's guilt.

¶ 43　　　In his brief, defendant cites the materiality test for the last two circumstances, *i.e.*, " 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Kyles*, 514 U.S. at 433-34 (quoting *Bagley*, 473 U.S. at 682) (opinion of Blackmun, J., joined by O'Connor, J.). He argues that credibility was the key issue for every one of the State's witnesses, and thus he made a substantial showing of a reasonable probability that if the evidence had been disclosed the outcome of his trial would have been different. In support of his argument, he cites *Giglio v. United States*, 405 U.S. 150 (1972). There, the United States Supreme Court found material an undisclosed agreement or understanding between the government and its witness because the agreement or understanding was relevant to the witness's credibility and the government's case depended almost entirely on the witness's testimony. *Giglio*, 405 U.S. at 154-55. In this case, defendant has failed to allege how Scheel's coaching alone undermines confidence in his trial's outcome. Moreover, unlike *Giglio*, Scheel was one of the State's 43 witnesses that testified at defendant's trial. He was also one of the many witnesses that testified defendant in some way acknowledged killing Little. Unlike Martinez and Luna, defendant has not alleged Scheel was a main witness. Thus, defendant has failed to meet his burden of pleading a substantial showing of a constitutional violation with regard to Scheel.

¶ 44　　　Accordingly, we find the trial court did not err by dismissing defendant's *Brady* claim.


¶ 45　　　　　　　　　　　　　5. *Other Due-Process Claims*

¶ 46　　　Defendant also asserts his due-process rights were violated because defendant had committed a crime against two of the jurors in the past and Martinez's identification was inherently unreliable and suggestive.


¶ 47　　　　　　　　　　　　　　　a. *Jurors*

¶ 48　　　Defendant cites *People v. Holmes*, 69 Ill. 2d 507, 514, 372 N.E.2d 656, 659 (1978),

where our supreme court recognized outside influences exerted on a jury during deliberations may have such a probability that prejudice will result that the trial inherently lacked due process. The *Holmes* court emphasized that not "every instance in which extraneous or unauthorized information reaches the jury results in error so prejudicial as to require reversal." *Holmes*, 69 Ill. 2d at 519, 372 N.E.2d at 661. There, some of the jurors did an independent investigation, which resulted in reversible error because the information discovered was crucial to the question of the defendant's identification and he had neither been confronted at trial with the information nor given the opportunity to refute it. *Holmes*, 69 Ill. 2d at 519, 372 N.E.2d at 662.

¶ 49　Here, defendant alleges the jurors believed defendant had committed a crime against one of the jurors in the past. However, Randall Howard's affidavit only indicates a tall bailiff opined defendant was "gonna fry this time" because defendant had previously robbed the homes of two of the jurors. Howard's affidavit does not indicate the jurors were aware defendant had robbed two of their homes in the past. Moreover, defendant does not allege prejudice requiring reversal, despite *Holmes* emphasizing not every extraneous information received by the jury requires reversal. *Holmes*, 69 Ill. 2d at 519, 372 N.E.2d at 661. Last, this speculative claim is refuted by the *voir dire* transcripts, which show the trial court questioned the jurors about (1) knowing defendant and (2) being the victim of a crime, and none of them revealed being defendant's crime victim. In response to the questions, only one of the jurors stated she was a victim of a crime about seven years earlier. The crime involved a man and woman trying to enter her home. The people were later caught when they tried to enter another home, and the juror heard the people "served time." The juror did not know the people's names and did not testify against them. A potential juror did state defendant and a trial witness broke into his home when defendant and his friend were juveniles. However, that potential juror was struck for cause.

¶ 50　Accordingly, the trial court properly dismissed this claim as well.

### b. *Identification*

¶ 52　Defendant also argues his due-process right was violated because Martinez's testimony about defendant's identification was inherently unreliable and suggestive. In support of his argument, he cites *People v. Rodriguez*, 387 Ill. App. 3d 812, 829, 901 N.E.2d 927, 943 (2008), which dealt with showup identifications. Martinez did not identify defendant at a show-up, and thus that case is irrelevant. To the extent defendant is arguing the same legal analysis regarding unnecessarily suggestive showups should apply to Martinez's identification, he does not even conduct the two steps of the due-process analysis for showups in his brief. See *People v. Ramos*, 339 Ill. App. 3d 891, 897, 791 N.E.2d 592, 597 (2003). Accordingly, defendant has forfeited this issue by failing to develop his argument.

¶ 53　For the aforementioned reasons, we find the trial court properly dismissed defendant's claim of other due-process violations.

### 6. *Cumulative-Error Claim*

¶ 55　Defendant also argues numerous trial errors occurred cumulatively resulting in the denial

of his due-process rights but only notes his claim in his *pro se* postconviction pleadings that he was visibly shackled during trial and was forced to wear a stun belt. However, defendant did not generally incorporate his prior postconviction pleadings in his final amended postconviction petition and did not retain that issue in his amended petition. Accordingly, that issue is not before us. See *People v. Jones*, 211 Ill. 2d 140, 148, 809 N.E.2d 1233, 1239 (2004) (holding a defendant may not raise an issue for the first time while on appeal in a postconviction proceeding).

¶ 56 Moreover, the only "error" we have found that was properly pleaded in the amended postconviction petition and then argued on appeal was the *Brady* violation related to Scheel. However, we found defendant had not explained how that evidence alone was material, and thus it did not warrant an evidentiary hearing. Accordingly, we find the trial court did not err by dismissing defendant's cumulative-error claim.

¶ 57                         7. *March 2011 Motion To Supplement*

¶ 58 On appeal, defendant does not provide any analysis in his argument section regarding why the trial court erred in denying his March 2011 motion to supplement his amended postconviction petition. Thus, defendant has forfeited this issue.

¶ 59                              8. *Discovery Motion*

¶ 60 While defendant notes in his brief the trial court denied his motion for discovery filed with his amended postconviction petition, he does not provide any argument in his analysis section as to why the trial court's denial was erroneous. Moreover, the record shows the motion simply became moot when the court dismissed the postconviction petition as the discovery motion was never called for a hearing. Accordingly, defendant forfeited any issues related to his motion for discovery.

¶ 61                              B. Ballistics Testing

¶ 62 Defendant last addresses his March 2011 motion for ballistics testing, which sought the opportunity to test bullets recovered from the scene against the Integrated Ballistics Identification System (IBIS) database to determine if that database can provide evidence of the true perpetrator of the murder in this case. In May 2011, the trial court denied the motion without a hearing.

¶ 63 Section 116-3 of the Procedure Code (725 ILCS 5/116-3 (West 2010)) provides, in part, as follows:

"(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint, Integrated Ballistic Identification System, or forensic DNA testing, including comparison analysis of genetic marker groupings of the evidence collected by criminal justice agencies pursuant to the alleged offense, to those of the defendant, to those of other forensic evidence, and to those maintained under subsection (f) of Section 5-4-3 of the Unified Code of Corrections, on evidence that was secured in relation to the trial which resulted in his or

her conviction, and:

>  (1) was not subject to the testing which is now requested at the time of trial; or

>  (2) although previously subjected to testing, can be subjected to additional testing utilizing a method that was not scientifically available at the time of trial that provides a reasonable likelihood of more probative results. Reasonable notice of the motion shall be served upon the State.

>  (b) The defendant must present a prima facie case that:

>  (1) identity was the issue in the trial which resulted in his or her conviction; and

>  (2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.

>  (c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:

>  (1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence even though the results may not completely exonerate the defendant;

>  (2) the testing employs a scientific method generally accepted within the relevant scientific community."

Thus, to establish a *prima facie* case for forensic testing under section 116-3, "the defendant must show that identity was the central issue at trial and that the evidence to be tested was subject to a sufficiently secure chain of custody." *People v. Johnson*, 205 Ill. 2d 381, 393, 793 N.E.2d 591, 599 (2002). Thereafter, the trial court "must determine whether this testing will potentially produce new, noncumulative evidence that is materially relevant to the defendant's actual-innocence claim." *Johnson*, 205 Ill. 2d at 393, 793 N.E.2d at 599. On appeal, a trial court's ruling on a motion for testing under section 116-3 without an evidentiary hearing is reviewed *de novo*. *People v. Pursley*, 407 Ill. App. 3d 526, 529, 943 N.E.2d 98, 102 (2011).

¶ 64 In this case, defendant argues the bullets used to kill Little were collected as part of the police investigation and no comparison has been made with ballistics evidence within the IBIS database. Moreover, identity was the issue at defendant's trial, and chain of custody is not disputed. Also not disputed is the fact that IBIS testing employs a generally accepted scientific method. See *Pursley*, 407 Ill. App. 3d at 532, 943 N.E.2d at 104; 725 ILCS 5/116-3(a) (West 2010).

¶ 65 Thus, the pertinent issue here centers on whether "the testing has the scientific potential to produce new, noncumulative evidence that is materially relevant, though not necessarily exonerating, to defendant's claim of actual innocence." *Pursley*, 407 Ill. App. 3d at 532, 943 N.E.2d at 104. Our supreme court has stated "evidence which is 'materially relevant' to a defendant's claim of actual innocence is simply evidence which tends to significantly advance that claim." *People v. Savory*, 197 Ill. 2d 203, 213, 756 N.E.2d 804, 810-11 (2001). The determination of whether evidence is materially relevant to defendant's claim "requires

an evaluation of the evidence introduced at trial, as well as the evidence the defendant seeks to test." *Johnson*, 205 Ill. 2d at 396, 793 N.E.2d at 601.

¶ 66    In *Savory*, 197 Ill. 2d at 205, 756 N.E.2d at 806, the defendant was convicted of two murders in 1977. On appeal, the appellate court reversed his convictions, finding his confession was inadmissible. *Savory*, 197 Ill. 2d at 205-06, 756 N.E.2d at 806. At the defendant's second trial, the State's evidence included admissions the defendant made to friends, statements he made to police prior to confessing, and other physical evidence connecting the defendant to the offenses, including a bloodstain found on a pair of trousers recovered from his home that was of the same blood type as one of the victim's. *Savory*, 197 Ill. 2d at 206-07, 756 N.E.2d at 807. The defendant presented testimony from his father, who claimed the trousers belonged to him and the bloodstain occurred after he cut his leg. *Savory*, 197 Ill. 2d at 208, 756 N.E.2d at 807. A jury found the defendant guilty, and his convictions and sentences were affirmed on appeal. *Savory*, 197 Ill. 2d at 208, 756 N.E.2d at 808.

¶ 67    The defendant's postconviction and *habeas corpus* petitions were denied, and he then filed a motion pursuant to section 116-3 of the Procedure Code, requesting DNA testing of the bloodstained trousers. *Savory*, 197 Ill. 2d at 208-09, 756 N.E.2d at 808. The defendant claimed he was innocent of the murders, and he alleged the test results would show the blood did not match the victim and would eliminate one of the pieces of physical evidence introduced by the State. *Savory*, 197 Ill. 2d at 209, 756 N.E.2d at 808. The trial court denied the defendant's motion, and the appellate court affirmed with one justice dissenting. *Savory*, 197 Ill. 2d at 209, 756 N.E.2d at 808.

¶ 68    On appeal, the supreme court considered the evidence introduced at trial and assessed the evidence the defendant sought to test. *Savory*, 197 Ill. 2d at 214, 756 N.E.2d at 811. The court found the testimony regarding the possible source of the bloodstain amounted to only a minor part of the State's strong evidence against the defendant, including his knowledge of certain features of the crime scene and his statements and admission to others. *Savory*, 197 Ill. 2d at 214-15, 756 N.E.2d at 811. The court concluded "a test result favorable to defendant would not significantly advance his claim of actual innocence, but would only exclude one relatively minor item from the evidence of guilt marshaled against him by the State." *Savory*, 197 Ill. 2d at 215, 756 N.E.2d at 811-12.

¶ 69    In *Pursley*, 407 Ill. App. 3d at 527, 943 N.E.2d at 100, a jury found the defendant guilty of first degree murder, and the trial court sentenced him to natural life in prison. The appellate court affirmed his conviction and sentence. *Pursley*, 407 Ill. App. 3d at 527, 943 N.E.2d at 100. The defendant later filed two postconviction petitions, and the trial court's dismissal of both petitions was affirmed on appeal. *Pursley*, 407 Ill. App. 3d at 527-28, 943 N.E.2d at 100. The defendant then filed a motion for ballistics testing pursuant to section 116-3 of the Procedure Code, which the trial court denied. *Pursley*, 407 Ill. App. 3d at 528, 943 N.E.2d at 100-01.

¶ 70    The defendant appealed, arguing "IBIS testing could reveal that ballistics evidence from the crime scene might match a weapon that was used in a crime *after* defendant was incarcerated, which could be exonerating evidence as the State heavily relied upon the ballistics evidence produced at trial." (Emphasis in original.) *Pursley*, 407 Ill. App. 3d at 529,

943 N.E.2d at 102. In determining whether the evidence was "materially relevant," the Second District evaluated the evidence presented at trial and the evidence the defendant sought to acquire through testing. The court stated, in part, as follows:

> "The best outcome that defendant could obtain from IBIS testing is that the crime scene evidence could be 'matched' to the evidence of another crime that occurred after police confiscated defendant's Taurus gun, thus implicating another possible weapon besides defendant's gun. *** Such evidence would impeach the State's evidence that the crime scene bullets and casings came from defendant's Taurus to the exclusion of all other guns." *Pursley*, 407 Ill. App. 3d at 535, 943 N.E.2d at 106.

The court noted the evidence included a Taurus gun and magazine, fired bullet slugs, spent bullet casings, and fired bullet fragments. *Pursley*, 407 Ill. App. 3d at 535-36, 943 N.E.2d at 107. The State presented forensic toolmark and firearms experts, one of whom testified the discharged cartridge cases in evidence were fired from the Taurus gun to the exclusion of all other firearms. *Pursley*, 407 Ill. App. 3d at 536, 943 N.E.2d at 107. The defense also presented a firearms and toolmark expert, who opined the crime scene bullets were probably fired by a Taurus gun but not the one retrieved from the defendant's apartment. *Pursley*, 407 Ill. App. 3d at 537, 943 N.E.2d at 108.

¶ 71    The Second District found the State and the defense both relied upon the ballistics evidence, and much of the State's remaining evidence was circumstantial. *Pursley*, 407 Ill. App. 3d at 538-39, 943 N.E.2d at 109. The court concluded the defendant met the requirements of section 116-3, since using the IBIS database to search for additional matches had the potential to produce new evidence to significantly advance his claim. *Pursley*, 407 Ill. App. 3d at 539, 943 N.E.2d at 109-10.

¶ 72    We find this case before us more in line with *Savory* than *Pursley*. Here, the State did not rely on ballistics evidence to support defendant's guilt. Thus, as in *Savory*, any test results would not eliminate a major part of the State's case against defendant. In contrast to *Pursley*, where a gun from the defendant's apartment was recovered and bullet casings and fragments were tested and compared, no gun was recovered in this case. Any new evidence would not disprove a gun used by defendant to shoot Little was not the murder weapon. Thus, any test result would not significantly advance defendant's claim of actual innocence. Moreover, defendant's claim that ballistics testing could show some unknown gun was used in some undocumented Bloomington gas station robberies occurring after he was convicted and thereby identify the "true perpetrator of this crime" is wholly speculative. Accordingly, we find the trial court did not err in denying defendant's section 116-3 motion.

¶ 73                                III. CONCLUSION

¶ 74    For the reasons stated, we affirm the McLean County circuit court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 75    Affirmed.

¶ 76    SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

¶ 77    In his petition for rehearing, defendant notes, *inter alia*, the State bore the burden of proving *res judicata* barred defendant's ineffective-assistance-of-counsel claims. While defendant is correct the State had the burden in the trial court, defendant, as the appellant, had the burden of argument and research on appeal. See *Timothy Whelan Law Associates, Ltd. v. Kruppe*, 409 Ill. App. 3d 359, 365, 947 N.E.2d 366, 373 (2011) (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682, 624 N.E.2d 928, 931 (1993)). This court was entitled to an appellant brief in which the " 'issues [were] clearly defined with pertinent authority cited and cohesive arguments presented.' " *Kruppe*, 409 Ill. App. 3d at 365, 947 N.E.2d at 373 (quoting *Obert*, 253 Ill. App. 3d at 682, 624 N.E.2d at 931). As previously stated, "this court is not a depository into which the appellant can dump his burden of argument and research." *Supra* ¶ 11 (citing *Barth*, 371 Ill. App. 3d at 507, 867 N.E.2d at 1117). Despite the fact the issue of ineffective assistance of counsel was raised in the trial court and on direct appeal, defendant presented less than a page of argument on the issue of *res judicata*. The argument he did present was conclusory and even misrepresented the proceedings in the trial court. Such an argument does not meet defendant's burden of argument and research. Accordingly, defendant's ineffective-assistance-of-counsel claim was not properly presented and argued on appeal, and thus we did not address the issue on the merits, *i.e.*, it was forfeited. Ironically, defendant's argument on the issue in his petition for rehearing is much longer and more in depth.

¶ 78    In addition to defendant's ineffective-assistance-of-counsel claim, we also did not address on the merits the majority of defendant's other issues because defendant (1) either did not properly plead the issue in his postconviction petition, *i.e.*, he failed to plead due diligence in discovering the "new" evidence in support of his actual-innocence claim or (2) failed to argue the issue in his appellant brief, *i.e.*, defendant's *Brady* claim based on the State's alleged deals with Dennis Hendricks and Bill Moffit. Also, as noted in the opinion, defendant sometimes failed to reply to the State's argument in his reply brief. See, *e.g.*, *supra* ¶ 39.

¶ 79    In this supplemental opinion, we emphasize this court does not have the function or the obligation to act as an advocate for defendant or search the record for error. See *Obert*, 253 Ill. App. 3d at 682, 624 N.E.2d at 931. *De novo* review does not mean this court examines anew every issue presented in the postconviction petition and determines if the issue should have survived the State's motion to dismiss. See *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 45, 2011 WL 4469515, at *6 (noting that, while the defendant's postconviction petition raised 15 claims of ineffective assistance of trial and appellate counsel, the reviewing court would only consider those claims that the defendant raised in his appeal). Rather, the appellate court considers, without deference to the trial court's decision, those issues the appellant has clearly defined and supported with cohesive arguments and citation to pertinent authority.