2020 IL App (1st) 171504-U

FIFTH DIVISION
SEPTEMBER 4, 2020

No. 1-17-1504

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 02 CR 6639 (02) |
| | ) | |
| MICHAEL SAMANTA, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Connors and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held:*  Denial of leave to file successive postconviction petition reversed in part where defendant made colorable claim of actual innocence.

¶ 2   Defendant-appellant Michael Samanta, convicted of first-degree murder under an accountability theory, appeals the circuit court of Cook County's order denying him leave to file a successive postconviction petition.

¶ 3   On appeal, the defendant argues that the court erred in denying his motion for leave to file a successive postconviction petition where he presented newly discovered evidence of his actual

innocence and evidence of ineffective assistance of trial counsel.  For the reasons that follow, we affirm in part and reverse in part the judgment of the circuit court of Cook County and remand the case with instructions.

¶ 4                                       BACKGROUND

¶ 5      On July 28, 2001, the defendant was driving with co-defendant Francisco Romero near 1714 West 48th Street in Chicago when Romero exited the vehicle and shot and killed 12-year-old Francisco Macias, who was standing with a group of people.

¶ 6      When police responded to the shooting, they spoke with Jesus Dias and Jose Cepeda, both of whom witnessed the shooting. Based on Jose Cepeda's description, the officers began searching for a 16 to 18 year old boy, with a teardrop tattoo under his right eye and a thin mustache.  Edgar Jiminez, another witness to the shooting, identified Romero as the shooter in a photo array on July 30, 2001 and an in-person line up on August 3, 2001.[1]

¶ 7      Fabian Gomez, a confidential informant for the Chicago police and a member of the Latin Saints street gang, called the police with information about Fernando Macias's murder shortly thereafter.  He implicated Romero as the murderer and also gave a statement indicating that he learned from the defendant's brother, Fernando Guerra, that the defendant had driven Romero to and from the shooting.  On September 25, 2001, the trial court authorized the use of an eavesdropping device for a consensual overhear between Gomez and the defendant.

¶ 8      Gomez attempted to elicit information from the defendant about the crime on three occasions while wearing the eavesdropping device.  The third time, on October 4, 2001, Gomez asked the defendant "You lit him up in broad daylight?", and the defendant replied that they

---

[1] Romero had a teardrop tattoo under his left eye. All participants in the line up had a Band-Aid under their left eye because no one else had a tattoo.

"weren't even planning it, man. We were smoking a [blunt]." The defendant also told Gomez "you know how I be havin' that thing with me." Gomez testified that "that thing" was a gun.

¶ 9    The defendant was arrested on February 21, 2002. Initially, the defendant denied any involvement in Fernando Macias's murder, but after reading the transcript and listening to the audio recording of the consensual overhear, the defendant inculpated himself to both Detective Thomas Cepeda, Jr. and assistant state's attorney Jeffery Neslund.

¶ 10    Detective Cepeda and ASA Neslund testified that the defendant admitted that he and Romero were driving around the day of the shooting smoking a blunt. The defendant and Romero spotted a group of boys, including someone affiliated with the rival Latin Souls street gang, on the sidewalk in front of 1714 West 48th Street. At Romero's direction, the defendant stopped the car in a gangway next to the building and gave Romero his .380 caliber handgun. Romero exited the car and ran down the gangway towards where they had seen the group of boys. The defendant heard a gunshot and Romero ran back to the car, after which the defendant drove away. When the defendant saw the gun, he believed it had jammed. According to ASA Neslund, the defendant told him that he knew Romero was going to shoot someone they believed was a rival Latin Soul.

¶ 11    Both Detective Cepeda and ASA Neslund testified that the defendant had been read his *Miranda* rights prior to giving the statement, but this was not memorialized. The defendant initially agreed to make a videorecording of his statement, but later changed his mind.

¶ 12    A pretrial motion to suppress both the defendant's confession and the recording of the consensual overhear was denied.

¶ 13    The jury found the defendant guilty of first degree murder in August 2006 and the trial

court sentenced the defendant to 25 years' imprisonment.[2] The defendant appealed his conviction, and this court affirmed his conviction and sentence on November 29, 2007.

¶ 14    This court subsequently affirmed the summary dismissal of the defendant's postconviction petition on September 30, 2010.

¶ 15    On February 22, 2017, the defendant moved for leave to file a successive postconviction petition, alleging, *inter alia*, that he was actually innocent based on the affidavit of Juan Macias, a witness to the shooting who averred that Romero was not the shooter. Specifically, Juan Macias averred that the shooter had a teardrop tattoo under his right eye and was wearing a green shirt. He also described that the shooter was shorter than him at 5 feet and 11 inches. In his affidavit, he stated that he overheard Romero discussing his case and Romero then showed him the sketch made from Juan Cepeda's description. Juan Macias noted that Romero had a teardrop tattoo under his left eye—not his right—and that Romero was taller than him. Juan Macias averred that he fled the scene and did not make a statement to the police at the time of the shooting because he was carrying marijuana and had a gun.

¶ 16    The defendant further alleged that his trial counsel was ineffective for failing to provide evidence that Romero was not the shooter, including (1) testimony from a gang expert who could testify that the shooter was unlikely to be a Latin Saint based on the initially reported location of his teardrop tattoo; and (2) impeachment testimony from Jiminez regarding the shooter's clothes and the location of the shooter's teardrop tattoo. Specifically, in his initial statement to the police, Jiminez (11 years old at the time), described the shooter as having a teardrop tattoo under his right eye, which, according to the defendant's gang expert, was the location of such tattoos for Latin

---

[2] Romero was tried separately and found guilty of first degree murder in January 2006.

*Souls* like Jiminez and the victim, not Latin *Saints* like Romero. The defendant amended his petition in April 2017 alleging that trial counsel was also ineffective for failing to interview the five eyewitnesses to the shooting.

¶ 17    The circuit court denied the defendant leave to file his successive postconviction petition on May 5, 2017 and the defendant appealed.

¶ 18                                    ANALYSIS

¶ 19    We note that we have jurisdiction to review this matter, as the defendant timely appealed. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); Ill. S. Ct. R. 606 (eff. July 1, 2017).

¶ 20    The Post-Conviction Hearing Act (Act) allows a defendant who is imprisoned in a penitentiary to challenge his conviction or sentence on the grounds that it was the result of a denial of his constitutional rights.  725 ILCS 5/122-1 (West 2016). The Act ordinarily contemplates the filing of a single postconviction petition (*People v. Brown*, 2017 IL App (1st) 150132, ¶ 35) and explicitly states that "any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived" (725 ILCS 5/122-3 (West 2016)).  This is because successive postconviction petitions "'plague the finality of criminal litigation.'"  *Brown*, 2017 IL App (1st) 150132, ¶ 36 (quoting *People v. Tenner*, 206 Ill. 2d 381, 392 (1991)).

¶ 21    Because successive postconviction petitions are so disfavored, a defendant must obtain leave of court prior to filing such a petition.  725 ILCS 5/122-1(f) (West 2018).  And a court should only grant leave where a defendant can show either (1) cause and prejudice for failure to raise the claim earlier, or (2) a "fundamental miscarriage of justice," also known as a claim of actual innocence.  See *People v. Edwards*, 2012 IL 111711, ¶¶ 22-23.  Here, the defendant argues that he has established both cause and prejudice for his failure to raise his ineffective assistance of counsel

claims earlier as well as actual innocence. We review *de novo* a trial court's denial of leave to file a successive postconviction petition. *People v. Bailey*, 2017 IL 121450, ¶ 15.

¶ 22    Turning first to the defendant's claims of ineffective assistance, the defendant argues that he received ineffective assistance of counsel where trial counsel (1) did not call a gang expert to explain the significance of Jiminez's changing testimony regarding the location of the shooter's teardrop tattoo; (2) failed to impeach Jiminez with Jiminez's earlier description of the shooter; and (3) failed to investigate the five other eyewitnesses to the shooting. In order to establish ineffective assistance of counsel, the defendant must show that counsel's performance was objectively unreasonable and he suffered prejudice as a result. *People v. Garcia*, 405 Ill. App. 3d 608, 616 (2010).

¶ 23    Before analyzing the merits of these claims, we must first consider whether the defendant has established cause and prejudice for the failure to raise these claims at an earlier stage. "Cause" is an objective factor that impeded counsel's ability to raise the claim earlier, while "prejudice" occurs when the alleged constitutional error so infected the entire trial that the resulting conviction or sentence violates due process. *People v. Ortiz*, 235 Ill. 2d 319, 329 (2009).

¶ 24    With regard to cause, the defendant argues that he was prevented from raising these claims earlier because his appellate counsel was the same as his postconviction counsel, and ineffective during both stages of review. Specifically, he argues that his attorney was ineffective for failing to raise these arguments on direct appeal, and because that attorney continued to represent him in his initial postconviction petition, the attorney could not argue that he was ineffective on direct appeal. See *People v. Lawton*, 212 Ill. 2d 285, 296 (2004) ("An attorney cannot be expected to argue his own ineffectiveness."). But this argument fails because the arguments of ineffective assistance of trial counsel the defendant raises here could *not* have been raised on direct appeal, as

they rely on matters outside the record.  See *People v. Veach*, 2017 IL 120649, ¶ 46 (ineffective assistance of counsel claims are better suited for collateral proceedings where the trial record is incomplete or inadequate for resolving that claim).

¶ 25    For instance, the defendant maintains that trial counsel should have called a gang expert, but evaluating the merits of this argument required evidence of what the gang expert would have testified to, which was not in the record on direct appeal.  Likewise, the defendant's arguments that his trial counsel should have interviewed or investigated the five eyewitnesses to the shooting also required evidence of what those eyewitnesses would have revealed.  Because this evidence was outside the trial record, this allegation of ineffective assistance of trial counsel could not have been argued on direct appeal and therefore is not a basis for arguing that the defendant suffered ineffective assistance of appellate counsel so as to excuse his failure to raise this claim in an earlier proceeding.

¶ 26    To the extent the defendant argues that his failure to raise these claims earlier should be excused due to postconviction counsel's failure to otherwise provide "reasonable assistance" pursuant to Illinois Supreme Court Rule 651(c), this, too, is meritless.  The Act does not provide a standard of legal representation at the first stage of postconviction proceedings, and Rule 651(c) applies only to counsel appointed or retained *after* a *pro se* petition has been summarily dismissed. *People v. Miranda*, 2018 IL App (1st) 170218, ¶ 30.  Therefore, we conclude that the defendant cannot show cause for failure to raise these three claims earlier, and as such, we need not reach their merits.

¶ 27    We turn then to the defendant's claim that he suffered a "fundamental miscarriage of justice" because he was actually innocent of the crime for which he was convicted.  In order to establish actual innocence for purposes of obtaining leave to file a successive postconviction

petition, the defendant must provide evidence that is newly discovered, material and noncumulative, and of such conclusive character that it would probably change the result on retrial. *People v. Robinson*, 2020 IL 123849, ¶ 47.

> "Newly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence. [Citation.] Evidence is material if it is relevant and probative of the petitioner's innocence. [Citation.] Noncumulative evidence adds to the information that the fact finder heard at trial. [Citation.] Lastly, the conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result. [Citation.]" *Id.*

¶ 28 The defendant points to Juan Macias's affidavit exculpating Romero as the shooter as evidence that he was actually innocent. With regard to when this evidence was discovered, the State points out that it is unclear when the defendant received the affidavit. In the defendant's original successive postconviction petition, filed in February 2017, Romero submitted an affidavit stating that he sent the defendant Juan Macias's affidavit in 2015, but in the defendant's amended successive postconviction petition filed in April 2017, Romero stated that he sent the affidavit "in the beginning of 2017." But whether the defendant learned of Juan Macias's affidavit in 2015 or 2017 is irrelevant: the defendant was unaware of Juan Macias's testimony prior to trial in August 2006, and evidence is newly discovered if it was not discovered *at or prior to trial* and was not available earlier through due diligence. See *People v. Snow*, 2012 IL App (4th) 110415, ¶ 21. It is undisputed that Juan Macias's affidavit was unavailable to the defendant prior to trial and could not have been discovered earlier given that Juan Macias did not reveal his presence at the scene of the shooting.

¶ 29    Next, the State contends that Juan Macias's affidavit was not material, because it exculpated only *Romero* and the State did not need to establish the identity of the principal actor (the shooter) in order to establish the *defendant's* guilt under an accountability theory. While this is true, as far as it goes (*People v. Ivy*, 2015 IL App (1st) 130045, ¶ 41), the fact remains that here the State's theory of the case was premised on the fact that the defendant was with *Romero* on the date and time of the shooting. The State introduced evidence establishing that the defendant drove *Romero* to the location where the shooting occurred and gave *Romero* his gun. If, as Juan Macias averred, Romero was *not* the shooter, then the defendant could not be guilty under an accountability theory because there was no evidence that the defendant was with anyone other than Romero that day.

¶ 30    Finally, turning to the issue of whether the affidavit is "of such conclusive character that it would probably change the result on retrial," the State maintains that because the affidavit does not exonerate the defendant or undermine the overwhelming evidence of the defendant's guilt at trial, it does not meet this standard. Specifically, the State points to the defendant's statements implicating himself in the crime to Gomez, Detective Cepeda, and ASA Neslund. However, as the defendant elicited at trial, neither the detective nor the assistant state's attorney memorialized the *Miranda* warnings they gave to the defendant, nor was the defendant's statement itself formally recorded. And the defendant's statements to Gomez regarding the shooting were equivocal. Under these circumstances, Juan Macias's affidavit would probably change the result on retrial as it wholly exonerates Romero. As discussed *supra* ¶ 32, if Romero was not the shooter, the State's theory of the defendant's accountability fails. Accordingly, we conclude that the court erred in denying the defendant leave to file his successive postconviction petition insofar as it alleged a colorable claim of actual innocence.

¶ 31                                CONCLUSION

¶ 32    For the reasons stated, we reverse the circuit court of Cook County's denial of the defendant's motion for leave to file a successive postconviction petition alleging actual innocence, and remand the case for the appointment of counsel and second stage proceedings on this allegation. We affirm the court's denial of the defendant's motion insofar as it alleged ineffective assistance of counsel.

¶ 33    Affirmed in part and reversed in part and case remanded.