2021 IL App (1st) 191364-U

THIRD DIVISION
June 30, 2021

No. 1-19-1364

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 84 C 14268 |
| | ) | |
| MARCUS HUNTER, | ) | Honorable |
| | ) | Thaddeus L. Wilson, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court properly denied defendant leave to file his successive postconviction petition where defendant's claim of actual innocence was barred by the doctrine of *res judicata*, and in the alternative, defendant failed to present newly discovered evidence to support his claim.

¶ 2    Defendant Marcus Hunter[1] appeals the trial court's order denying him leave to file his eighth successive *pro se* postconviction petition and argues that the court erred because he has presented newly discovered evidence to support a colorable claim of actual innocence.

_____

[1] Defendant's name is spelled both "Marcus" and "Markus" throughout the record. We use the spelling that defendant used in his filings in this court.

¶ 3    Following a jury trial, defendant was convicted of armed robbery, home invasion, and aggravated battery, and sentenced to natural life imprisonment under the habitual criminal statute (Ill. Rev. Stat. 1983, ch. 38, ¶ 33B-1, recodified as amended at 730 ILCS 5/5-4.5-95 (West 2018)). We recite only those facts necessary for our disposition in this case. A thorough recitation of the facts are set forth in the direct appeal. *People v. Glover*, 173 Ill. App. 3d 678, 680-83 (1988).

¶ 4    Defendant and his four codefendants William Glover, Marvin Barber, David DuPree, and Marvin Bryant were convicted of armed robbery, home invasion, and aggravated battery after they allegedly entered an unlicensed club operated by Eddie Morris on the first floor and the basement of a building where he resided with his family on the second floor. At trial, Wade Curry testified that he was in the kitchen on the first floor at 3735 South Ellis after midnight on December 7, 1984, when he saw defendant point a gun at the head of a woman who worked there. Defendant told Curry to go into the basement. Defendant and the woman followed Curry into the basement while defendant kept the gun pointed at the woman's head. In the basement. defendant asked where Morris was and then went back upstairs.

¶ 5    Rosalind Morris testified that she was in her kitchen at 3735 South Ellis on December 7, 1984, when shortly after midnight, defendant entered carrying a pistol. He ripped the phone off the wall and asked where Morris was. When she explained that Morris was in the back of the house, defendant pointed the gun at her head and walked with her to the back of the house where he pushed his way into the bathroom, forced Rosalind and Morris into their bedroom, demanded money from them, tore a phone off the bedroom wall, took a number of items and put them in a pillowcase, and then followed Morris downstairs. When defendant went downstairs, Rosalind called 911 from another telephone in the bedroom. During her testimony, Rosalind testified that

her maiden name was Iaello. Morris's testimony substantially corroborated his wife's account. In total, there were seven eyewitnesses to the robberies whose accounts of the incident were substantially the same in all essential respects. See *Glover,* 173 Ill. App. 3d at 680-83.

¶ 6    In a consolidated direct appeal with his codefendants, defendant did not challenge his conviction and this court affirmed his sentence. *Glover*, 173 Ill. App. 3d 678 (1988). Defendant has unsuccessfully challenged his conviction in several collateral proceedings. *People v. Hunter*, Nos. 1-00-4043 and 1-01-3195 (Cons.) (2003) (unpublished order under Supreme Court Rule 23), No. 1-09-0198 (2010) (unpublished order under Supreme Court Rule 23), 2013 IL App (1st) 123192-U (summary order), 2014 IL App (1st) 120301-U, 2016 IL App (1st) 140294-U (summary order), and 2018 IL App (1st) 160402-U (summary order).

¶ 7    In 2011, defendant filed a motion for leave to file a successive postconviction petition, raising over 200 allegations, which the trial court denied. On appeal, defendant contended that he had satisfied the cause and prejudice test based on a claim that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to disclose evidence that a key witness for the State had lied under oath regarding her marital status and maiden name. *Hunter*, 2014 IL App (1st) 120301-U, ¶ 3. Defendant further argued that the State was aware of and coerced Rosalind's perjured testimony. *Id.* ¶ 5. In support, defendant "attached a funeral bulletin and obituary for Rosalind Christine Lerch. Lerch and Morris shared a first name and birthdate, but the obituary did not identify Morris as Lerch's husband ***." *Id*. This court affirmed the trial court's denial of leave to file the petition and concluded that defendant failed to "allege any cause whatsoever for his failure to raise the issue of Rosalind's alleged perjury in one of the multiple postconviction petitions he filed in the 23 years following her death." *Id.* ¶ 10.

¶ 8    In 2012, defendant sought leave to file another successive postconviction petition and

alleged that he was actually innocent, and the indictment was void. In support, defendant attached his own affidavit as well as an unsworn affidavit from codefendant Bryant. Defendant stated in his affidavit that on December 7, 1984, he had been invited to drink and gamble for free at Morris's club in a written invitation, which defendant recreated. Defendant visited the club, but denied going to the second floor, pulling a gun to rob anyone, and touching a telephone. He did not see "anyone robbing anyone." Defendant was "surprisingly arrested" by Chicago police while at the club. In his affidavit, Bryant denied his own involvement in the robbery of Morris's club. Bryant stated that he was in the gambling area of Morris's club at around midnight on December 7, 1984, and when he attempted to exit the basement, he was blocked by codefendant Glover. Glover pointed a gun at Bryant and threatened him. In response, Bryant "produced" his own gun and pointed it at Glover until Bryant was able to run from the basement. The trial court denied defendant leave to file his successive petition. On appeal, this court granted appellate counsel's motion to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and affirmed the trial court's judgment. *Hunter*, 2013 IL App (1st) 123192-U (summary order).

¶ 9    In 2013, defendant again sought leave to file his sixth successive postconviction petition and alleged a claim of actual innocence. Specifically, defendant contended that Morris, trial witnesses, and codefendant Bryant agreed to make false allegations against defendant because each owed Morris money from gambling debts. Morris made a deal with the Chicago police to avoid penalties related to his illegal gambling club. Defendant attached an affidavit from Bryant, which is identical to the previous affidavit except for a third page stating that defendant "never asked or ordered anyone" in his presence to rob or shoot people at Morris's club and included a sworn signature and a notary seal. Defendant again attached the funeral program for Lerch. In December 2013, the trial court denied defendant leave to file his successive petition, finding that

4

attached affidavit did not constitute newly discovered evidence to support a claim of actual innocence. On appeal, counsel filed a motion to withdraw under *Finley* and this court granted the motion and affirmed the trial court's judgment. *Hunter*, 2016 IL App (1st) 140294-U (summary order).

¶ 10     Again, in 2015, defendant sought leave to file his seventh successive postconviction petition, alleging actual innocence based on newly discovered evidence and that Rosalind had committed perjury in her testimony. Specifically, defendant alleged that former Chicago Lieutenant Jon Burge and his officers conspired with the Cook County State's Attorney's office to have Morris's club raided and coerced Rosalind to give a false statement against defendant. In support, defendant attached two affidavits from an inmate named Michael Johnson. Both affidavits stated that Johnson gave defendant the obituary for Lerch from 1988. Defendant again included the funeral notice for Lerch. Defendant also attached the same affidavit he prepared for his 2012 petition in which he denied participating in a robbery and was "surprisingly arrested" by Chicago police.

¶ 11     Defendant also attached a new affidavit from codefendant Bryant, dated October 2014. Bryant stated that on December 7, 1984, he was at Morris's club and was approached by a man he knew sometimes worked at the club to buy a piece of jewelry because the man had gambling debts. As Bryant walked through the club, he greeted defendant, who was seated at the bar and talking with Morris and Rosalind. Once he reached the basement gambling area, Bryant decided to go upstairs and buy a drink and was blocked by codefendant Glover. Bryant described the same confrontation from his previous affidavit in which he pointed his own gun at Glover and ran from the basement. He then stated that as he was running, he observed Morris with a gun pointed at defendant. Bryant "startled" Morris and defendant grabbed the gun. Bryant did not see

5

the outcome as he continued to run. When he left the club, he saw police cars and continued to run, but was arrested two blocks away. At the police station, Bryant was pressured to give a statement implicating defendant in the robbery of Morris's club, but Bryant refused. The police officers then physically attacked him.

¶ 12    The trial court denied defendant leave to file his petition and found that defendant previously raised this claim of actual innocence and was barred by *res judicata*. On appeal, appellate counsel again moved to withdraw under *Finley* and this court granted counsel's motion and affirmed the trial court's judgment. *Hunter*, 2018 IL App (1st) 160402-U (summary order).

¶ 13    In September 2018, defendant filed the current motion for leave to file his eighth successive postconviction petition. In his filing, defendant alleged multiple claims, including claims of actual innocence based on newly discovered evidence, the State failed to provide exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and ineffective assistance of trial and appellate counsel. Specifically, defendant again contended Rosalind and Eddie Morris conspired with Lieutenant Burge to frame defendant and his codefendants. Defendant attached an affidavit from Marvin Rhoden, a new affidavit from Johnson, and the same 2014 affidavit from codefendant Bryant as well as defendant's own previously submitted affidavit. Defendant indicated that he would amend with additional affidavits from other codefendants, but no amendment was filed.

¶ 14    Johnson stated in his new affidavit that Lerch conspired with Morris and Lieutenant Burge to frame defendant and his codefendant for the armed robbery and home invasion of Morris's club. Johnson stated that he was best friends with Lerch and was the godfather to her son, "which is why [Lerch] told me of the plot to frame" defendant and his codefendants for an armed robbery that never took place. According to Johnson, Morris instead owed defendant

money. Morris had a partnership with Lieutenant Burge regarding Morris's illegal gambling house. Johnson gave Lerch's obituary to defendant while both Johnson and defendant were inmates at Tamms Correctional Center. Johnson further stated that the case is "highly infused with gang rivalry" and as a result, he did not come forward earlier.

¶ 15    Marvin Rhoden stated in his affidavit that he was an inmate at the Menard Correctional Center and has known defendant since his youth. According to Rhoden, defendant was wrongly accused, charged, convicted, and sentenced. Defendant is a "superb social worker and reputed fraternal leader" and has been "targeted for unfavorable treatment by well-known gangsters and corrupt law enforcement agents."

¶ 16    On December 7, 1984, Rhoden, "as a persona grata," entered Morris's club. While he was "flirting with prostitutes and so-called decent women," he saw defendant enter the club with his "clandestine lover." While defendant and his date were mingling, Rhoden kept defendant "in sight" and defendant did not leave the ground floor. At one point, codefendant Glover started running and Morris pointed a gun at defendant and "spoke words inaudible to" Rhoden. Morris was then physically abusive toward defendant and other men and demanded money. When the police arrived, Lieutenant Burge was present. The police acted pursuant to Morris's instructions and defendant and other men were arrested.

¶ 17    Rhoden stated that he lost contact with defendant and did not see him again until 1990 when both men were inmates at the Cook County Jail. When they met, defendant did not mention "this particular case of his." In November 2016, when he was assigned near defendant, defendant "apprised [Rhoden] that he was behind the eight ball because of this case and he prayed me to testify in his behalf to the truthfulness of the foregoing allegations."

¶ 18    In May 2019, the trial court entered a written order denying defendant leave to file his

successive petition. The court found that apart from Rhoden's affidavit, everything in support of defendant's actual innocence claim was attached to a prior petition and was barred by *res judicata*. The court further concluded that Rhoden's affidavit was not newly discovered or not discoverable earlier through due diligence because the affidavit stated that defendant and Rhoden had known each other for years, saw each other at Morris's club the night of the offenses, and had spoken while at Cook County Jail in 1990. The court also found that Rhoden's affidavit was not so conclusive as to probably change the outcome.

¶ 19    This appeal followed.

¶ 20    On appeal, defendant argues that the trial court erred in denying him leave to file his successive postconviction petition because he presented newly discovered evidence to support his colorable claim of actual innocence. Specifically, defendant contends that his claims were supported by Johnson's affidavit which stated that at some point in time, Lerch told Johnson that she had conspired with Lieutenant Burge to frame defendant and the armed robbery never occurred. Defendant does not rely on the affidavits from Rhoden or Bryant to support his argument on appeal. Defendant has not challenged any of the additional claims raised in successive petition and has therefore forfeited those claims. *People v. Munson*, 206 Ill. 2d 104, 113 (2002) (concluding that the petitioner abandoned several postconviction claims by failing to raise them on appeal).

¶ 21    The Illinois Post-Conviction Hearing Act (Post-Conviction Act) (725 ILCS 5/122-1 through 122-8 (West 2018)) provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. 725 ILCS 5/122-1(a) (West 2018); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is limited to

constitutional deprivations that occurred at the original trial. *Coleman*, 183 Ill. 2d at 380. "A proceeding brought under the [Post-Conviction Act] is not an appeal of a defendant's underlying judgment. Rather, it is a collateral attack on the judgment." *People v. Evans*, 186 Ill. 2d 83, 89 (1999).

¶ 22 However, the Post-Conviction Act only contemplates the filing of one postconviction petition with limited exceptions. 725 ILCS 5/122-1(f) (West 2010); see also *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002). The supreme court has recognized two bases upon which the bar against successive proceedings will be relaxed. *People v. Edwards*, 2012 IL 111711, ¶ 22. The first is under section 122-1(f), a defendant must satisfy the cause and prejudice test for failure to raise the claim earlier in order to be granted leave to file a successive postconviction petition. 725 ILCS 5/122-1(f) (West 2010). The second basis to relax the bar against a successive postconviction is "what is known as the 'fundamental miscarriage of justice' exception." *People v. Edwards*, 2012 IL 111711, ¶ 23. "The United States Supreme Court has stated that the exception serves ' "as an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty, guaranteeing that the ends of justice will be served in full." ' " *Id.* (quoting *People v. Szabo*, 186 Ill. 2d 19, 43 (1998) (Freeman, C.J., specially concurring, joined by Heiple, J.) (quoting *McCleskey v. Zant*, 499 U.S. 467, 495 (1991)).

¶ 23 "In order to demonstrate a miscarriage of justice to excuse the application of the procedural bar, a petitioner must show actual innocence." *Id.* With respect to those seeking to relax the bar against successive postconviction petitions on the basis of actual innocence, the supreme court has held that "leave of court should be denied only where it is clear, from a review of the successive petition and the documentation provided by the petitioner that, as a matter of law, the petitioner cannot set forth a colorable claim of actual innocence." *Id.* ¶ 24. "Stated

9

differently, leave of court should be granted when the petitioner's supporting documentation raises the probability that 'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' " *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

¶ 24    "A ruling on an initial post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised on the initial petition." *People v. Orange*, 195 Ill. 2d 437, 449 (2001). More broadly, "any issues that have previously been decided by a reviewing court are barred by *res judicata*." *People v. Harris*, 224 Ill. 2d 115, 124-25 (2007). We review the trial court's denial of leave to file a successive postconviction petition *de novo*. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 25.

¶ 25    To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial. *People v. Robinson*, 2020 IL 123849, ¶ 47; see also *People v. Jackson*, 2021 IL 124818, ¶ 41. "Newly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence." *Robinson*, 2020 IL 123849, ¶ 47. Evidence is material if it is relevant and probative of the petitioner's innocence. *Id*. Noncumulative evidence adds to the information that the fact finder heard at trial. *Id*. "[T]he conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result." *Id*.

¶ 26    However, before we reach the merits of defendant's claim, we point out that defendant previously raised this claim of actual innocence in prior successive petitions and was unsuccessful. *Res judicata* bars defendant from relitigating claims previously raised and rejected. *People v. English*, 403 Ill. App. 3d 121, 131 (2010). While the trial court in its order declined to

consider Johnson's affidavit as *res judicata*, defendant has not addressed whether his claim of actual innocence is barred. But the same claim of actual innocence was previously rejected by the trial court and that judgment was affirmed by this court. See *Hunter*, 2016 IL App (1st) 160402-U (Summary order). As discussed above, defendant has argued in prior petitions that he was actually innocent because Morris conspired with Lieutenant Burge to arrest defendant and his codefendants at the club and that Rosalind Morris was the same person as Rosalind Lerch. Since this claim has already been raised in a prior successive postconviction petition, it is barred by *res judicata*.

¶ 27    Although a petitioner may file multiple successive petitions claiming actual innocence (*People v. Ortiz*, 235 Ill. 2d 319, 333 (2009)), we do not find that defendant may raise the same claim of actual innocence in a piecemeal fashion and avoid the bar of *res judicata* when defendant has supported this claim with the same previously disclosed witness adding statements based on a conversation known for more than 30 years. For this reason, we find the circumstances in this case distinguishable from the facts present in *Ortiz*. In that case, the defendant filed multiple postconviction petitions alleging actual innocence. In his third petition, the defendant raised a new claim of actual innocence based on the newly discovered evidence from a new witness. The supreme court found that a defendant "is not precluded from raising multiple claims of actual innocence where each claim is supported by newly discovered evidence." *Id*. at 333. There, the defendant was convicted of murdering the victim in a gang-related shooting in a Chicago park. An eyewitness came forward 10 years after the murder of his own volition after speaking with the defendant's mother and telling her he knew that the defendant was innocent. According to the witness, he was present in the park when he saw three members of his gang beating up the victim. Later, as the victim tried to get away, the witness

saw two of the men chasing the victim on bicycles and then fire gunshots at the victim. He did not see the defendant in the park that night. *Id*. at 326-27. After the murder, the witness moved to Wisconsin and left the gang. He did not report what he saw that night at the time because he feared being killed by the gang members. *Id*. at 327.

¶ 28     In contrast with *Ortiz*, defendant has previously raised the same claim of actual innocence at issue here. Unlike in *Ortiz*, defendant was aware of Johnson as an individual with potentially favorable evidence before the instant petition and presented an affidavit from Johnson in a previous petition. Defendant has been attaching Lerch's obituary to his petitions since 2011 and Johnson previously stated in an affidavit that he provided that obituary to defendant. It is clear that Johnson knew this information when defendant filed his previous petitions because Lerch passed away more than 30 years ago. Thus, the doctrine of *res judicata* is applicable here and defendant's claim has been barred.

¶ 29     Nevertheless, even if we relaxed the bar of *res judicata*, defendant has failed to set forth a colorable claim of actual innocence. We first consider whether Johnson's affidavit constitutes newly discovered evidence to support a colorable claim of actual innocence. It is the defendant's burden to show no lack of due diligence on his or her part. *People v. Snow*, 2012 IL App (4th) 110415, ¶ 21. If the evidence was available at a prior posttrial proceeding, the evidence is also not newly discovered evidence. *Id*. Evidence is also not newly discovered when the evidence presents facts already known to a defendant at or prior to trial, though the source of these facts may have been unknown, unavailable, or uncooperative. *Id*.; see also *People v. Jarrett*, 399 Ill. App. 3d 715,724 (2010).

¶ 30     Here, defendant contends that Johnson's affidavit presents newly discovered evidence because defendant could not have discovered this information prior to trial or when he filed his

12

prior petitions. According to defendant, he had "no way of knowing" Johnson's information regarding an alleged conversation with Lerch in which she told Johnson that no armed robbery or home invasion had occurred. Defendant has not asserted any due diligence on his part to obtain the evidence alleged in Johnson's most recent affidavit.

¶ 31　Contrary to defendant's assertion, we do not find that defendant has shown that Johnson's affidavit is "newly discovered" because he has made no showing that he could not have discovered it sooner through due diligence. Defendant has been attaching an obituary for Lerch since his fourth successive petition in 2011. He also alleged, without evidence, for the first time that:

> "Prosecutors and the police knew that these witnesses was [*sic*] lying and they
>
> coerce them into lying and giving these [*sic*] false testimony, these are the tactic
>
> that was use [*sic*] by Commander Jon Burge; and all of the police officer's teams
>
> that serve under him at that time. And they was [*sic*] known for playing one gang
>
> against the other."

¶ 32　In his seventh successive petition, defendant previously alleged the conspiracy involving Morris and Lieutenant Burge and affidavits from Johnson were attached as evidence. Both affidavits simply stated that Johnson gave an obituary for Rosalind Christine Lerch to defendant, Lerch had passed away on November 13, 1988, and offered no statements regarding the circumstances of defendant's arrest. In his 2015 petition, defendant raised the same allegations as in his current petition, *i.e.*, defendant's arrest was the result of an agreement between Morris and Lieutenant Burge and defendant lured to Morris's club with an offer of free gambling and drinks. Defendant also alleged that Rosalind Lerch was the same person as Rosalind Morris and she was coerced by Lieutenant Burge to provide a false police report.

¶ 33     In the current petition, Johnson stated for the first time in a new 2018 affidavit that he was the godfather of Lerch's son and at some undisclosed time, Lerch disclosed to him the plot to frame defendant and his codefendants with Morris and Lieutenant Burge. He stated that he did not come forward with this information earlier because the case was "highly infused with gang rivalry."

¶ 34     Since Lerch died in 1988, it is clear that this alleged conversation occurred more than 30 years ago. In his affidavits, Johnson listed his Department of Corrections inmate number and according to the Department's website, Johnson was admitted on November 14, 1986 and is serving a life sentence. See *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 66 (finding this court may take judicial notice of the Department of Corrections website). Defendant asks this court to assume that he was unaware of Johnson's alleged evidence for more than 30 years despite Johnson providing prior affidavits in support of defendant's successive petitions. Even taking as true Johnson's claim that he could not disclose this evidence previously due to gang activity, this evidence is not considered newly discovered where the source of the facts was uncooperative. See *Snow*, 2012 IL App (4th) 110415, ¶ 21. Based on the record before us, Johnson clearly discussed Lerch with defendant as early as 2011 when the obituary was first attached to defendant's petition.

¶ 35     Defendant has not addressed how he acted with due diligence in obtaining Johnson's new affidavit disclosing the conversation with Lerch. Rather, defendant appended his previous 2011 affidavit which stated that he was invited to Morris's club for free gambling and drinks, denied participation in an armed robbery, and was "surprisingly arrested." Further, since defendant has alleged this conspiracy in multiple successive petitions, he was aware of the facts to support his claim. Accordingly, we conclude that Johnson's affidavit does not constitute newly discovered

14

evidence and defendant has failed to set forth a colorable claim of actual innocence and we need not consider whether the affidavit was material and of such conclusive character as to probably change the result.

¶ 36    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 37    Affirmed.