# Illinois Official Reports

## Supreme Court

***People v. Gawlak*, 2019 IL 123182**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. SYLWESTER GAWLAK, Appellee. |
| Docket No. | 123182 |
| Filed | February 7, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Will County, the Hon. Daniel J. Rozak, Judge, presiding. |
| Judgment | Appellate court judgment reversed. <br> Circuit court judgment vacated; cause remanded with directions. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Evan B. Elsner, Assistant Attorneys General, of Chicago, of counsel), for the People. <br><br> James E. Chadd, State Appellate Defender, Thomas A. Lilien, Deputy Defender, and Yasemin Eken, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Elgin, for appellee. |

Justices                                    JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Garman, Burke, Theis, and Neville concurred in the judgment and opinion.

**OPINION**

¶ 1        In a collateral proceeding seeking DNA testing under section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2014)), the circuit court denied defendant's privately retained counsel's oral request to enter a limited scope appearance pursuant to Illinois Supreme Court Rule 13(c)(6) (eff. July 1, 2013). Following a later hearing when defendant appeared *pro se* and argued his motion extensively, the court denied defendant's section 116-3 motion.

¶ 2        On appeal, the appellate court vacated the circuit court's judgment and remanded for further proceedings. In relevant part, the appellate court concluded that "the trial court's denial of private counsel's request to enter a limited scope appearance on defendant's DNA motion was arbitrary and violated defendant's due process rights" under the United States Supreme Court's decision in *Powell v. Alabama*, 287 U.S. 45, 68 (1932). 2017 IL App (3d) 150861, ¶¶ 13-14.

¶ 3        For the reasons that follow, we reverse the appellate court's judgment because we conclude that no *Powell* violation occurred under the facts of this case. In the exercise of our supervisory authority, however, we vacate the circuit court's judgment and remand the matter to the circuit court for further proceedings as explained below.

¶ 4                                BACKGROUND

¶ 5        In 2008, defendant, Sylwester Gawlak, was charged by indictment, in relevant part, with two counts of predatory criminal sexual assault (720 ILCS 5/12-14.1(a)(1) (West 2006)) and one count of aggravated criminal sexual assault (720 ILCS 5/12-16(c)(1)(i) (West 2006)) committed against his 10-year-old daughter, J.G. The indictment alleged that defendant inserted his fingers in J.G.'s vagina, licked her vagina, and touched her buttocks for the purpose of defendant's sexual arousal. The underlying incident occurred at defendant's home, where J.G. was staying for the weekend.

¶ 6        Following an April 2009 jury trial, defendant was convicted of the three counts. The circuit court of Will County sentenced defendant to an aggregate prison term of 15 years.

¶ 7        On direct appeal, the appellate court affirmed defendant's convictions and sentences but vacated an assessed fine. The court remanded the matter to the circuit court with instructions to enter an order clarifying defendant's applicable monetary assessments. *People v. Gawlak*, No. 3-09-0678 (Feb. 1, 2011) (unpublished order under Illinois Supreme Court Rule 23).

¶ 8        Subsequently, between August 2011 and March 2015, defendant filed a series of *pro se* motions raising collateral challenges to his convictions, including petitions seeking relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 (West 2010)) and section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). At various times during the

- 2 -

resulting litigation, defendant was represented by different attorneys, both appointed and privately retained, and he also appeared *pro se* at some hearings. See *People v. Gawlak*, 2018 IL App (3d) 160164-U, ¶¶ 11-24 (in the context of defendant's separate appeal from the second-stage dismissal of his postconviction petition, the appellate court explained that defendant "has filed numerous *pro se* motions over the years" and summarized defendant's complex litigation history).

¶ 9        To clarify the parties' arguments in this appeal, it is important to note that the instant appeal does not directly involve defendant's *pro se* motions seeking relief under the Post-Conviction Hearing Act or section 2-1401 of the Code of Civil Procedure. Instead, the controversy here is focused on defendant's *pro se* motion seeking DNA testing under section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2014)), filed in May 2015, and the litigation associated with that action.

¶ 10       In defendant's *pro se* section 116-3 motion, titled a "motion for post-conviction forensic DNA testing pursuant to 725 ILCS 5/116-3," defendant sought to obtain "TOUCH DNA forensic testing" on hair and clothing evidence that he claimed was not tested for his trial. Defendant maintained that he was innocent and that the requested testing "may possibly develop conclusive scientific evidence of [his] innocence."

¶ 11       In July 2015, the State filed an objection to defendant's motion, arguing that defendant had not satisfied his statutory burden to obtain DNA testing under section 116-3. Specifically, the State contended that defendant could not establish the requisite factor that the identity of the offender was at issue because the controversy at defendant's trial was not whether another individual had committed the crime. Instead, the only contested matter at trial was whether the alleged assault described by defendant's minor daughter occurred at all.

¶ 12       At a September 30, 2015, hearing on his section 116-3 motion, defendant appeared *pro se* but was accompanied by attorney Joel Brodsky. After the circuit court, the State, and defendant addressed various pending matters, Brodsky addressed the court and asked, in relevant part, for leave to file a limited appearance in defendant's section 116-3 action. Brodsky explained to the court that "[y]our honor may be aware under Supreme Court Rule 13 there is this new way of appearing called a limited scope appearance," and Brodsky clarified that he sought "just to appear on [defendant's] post-conviction motion for DNA testing and no other matter." Brodsky did not offer, or otherwise present, any supporting pleadings for his request, but he did expressly cite Rule 13(c)(6) as the basis for his request for a limited scope appearance. Brodsky did not explain in what limited part, or parts, of the section 116-3 action he intended to represent defendant.

¶ 13       When the court asked for a response to Brodsky's request, the State commented that, "without having the benefit of having that Supreme Court Rule before me, I am guessing that it does not suggest that counsel can come in on part of a post-conviction petition." The State observed that defendant had different counsel for his pending section 2-1401 petition and implied that multiple attorney representation for defendant would be impractical. The State objected "to this basically limited scope appearance to argue a motion which relates to the post-conviction petition which is filed in this criminal matter and not a civil matter."

¶ 14       In reply, Brodsky argued that a motion seeking DNA testing under section 116-3 was "a separate post-conviction motion by [s]tatute" and that defendant's request for DNA testing "is really a separate matter of which I really do believe I could be of some assistance in helping

streamline it both to my—both to [defendant] who hopefully will be my client, the State, and the Court on this particular issue." Brodsky further contended that "[t]he purpose of the [s]ection 116-3 [motion] is to develop evidence for a post-conviction petition through the DNA" and that Rule 13(c)(6) applied because it was a civil matter.

¶ 15 After continued argument on the purpose of a section 116-3 action, the nature of a limited scope appearance, and the unique circumstances involved with defendant's other pending litigation, the trial court denied Brodsky's oral request to enter a limited scope appearance under Rule 13(c)(6). The court expressed its concern that defendant's case was "getting a bit unwielding" and explained that "[r]ight now, if I allowed this, I would have three attorneys; Mr. Caplan [on the section 2-1401 petition], Mr. Brodsky [on the section 116-3 motion], and the defendant who is representing himself."

¶ 16 Explaining its decision to deny Brodsky's motion for a limited appearance, the court stated:

"You know, if you want to assist [defendant], like I said, you're welcome to be here every single day. If he has questions about subpoenas, that's up to you if you want to answer them or not. If you want to serve as some advisory—in an advisory capacity without an appearance, you can certainly do that. That's really none of my business.

When this case comes up, only one [person] is going to be doing the talking, if it's not you, Mr. Brodsky, on every issue on the post-conviction [petition], then it will be [defendant] with the exception of course to the [section] 2-1401, which I maybe, just maybe mistakenly allowed another attorney to come in on. That's where we're at."

Brodsky replied "[t]hank you, your honor," and told the court that the attorney representing defendant on his pending section 2-1401 petition was absent because of a family medical issue and that attorney had asked Brodsky to inform the court of the situation. The court then proceeded to address the other matters pending in defendant's remaining litigation.

¶ 17 A few weeks later, on November 16, 2015, the trial court held a hearing on a number of defendant's pending *pro se* motions, including his *pro se* motion for DNA testing under section 116-3. Defendant appeared *pro se* at this hearing and argued extensively in support of his motion seeking DNA testing. The State also appeared and argued that defendant's motion should be denied. Brodsky was not present. Following arguments, the trial court denied defendant's motion.

¶ 18 On appeal, the appellate court vacated the trial court's decision to deny defendant's motion seeking DNA testing and remanded for further proceedings. Quoting *Powell*, 287 U.S. at 69, the court observed that, " '[i]f in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.' " 2017 IL App (3d) 150861, ¶ 13.

¶ 19 Applying *Powell*, the appellate court determined that the trial court should have allowed private counsel's request to enter a limited scope appearance on defendant's section 116-3 motion and that the court's decision to deny Brodsky's request for a limited appearance was arbitrary. The court explained that defendant's *pro se* section 116-3 motion was a distinct motion separate from defendant's other pending collateral motions, rendering those remaining motions "irrelevant" for purposes of limited representation by Brodsky. 2017 IL App (3d) 150861, ¶ 14. The court also declined to consider the merits of the State's harmless error

argument and expressed no opinion on the merits of defendant's motion for DNA testing. 2017 IL App (3d) 150861, ¶ 16.

¶ 20 Ultimately, the appellate court vacated the trial court's denial of defendant's motion for DNA testing under section 116-3 and remanded for further proceedings. The court explained that, on remand, "defendant may retain private counsel if he so chooses." 2017 IL App (3d) 150861, ¶ 16.

¶ 21 This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Nov. 1, 2017).

¶ 22                                                    ANALYSIS

¶ 23 On appeal, the State argues that defendant does not have a constitutional due process right under *Powell* to the limited scope appearance requested by Brodsky. Specifically, the State contends that the trial court correctly denied Brodsky's request for a limited scope appearance because his oral request did not comply with this court's Rule 13(c)(6). Moreover, Brodsky failed to enter a general appearance in the section 116-3 action. Under these circumstances, the State maintains that defendant's due process rights to choose privately retained counsel under *Powell* were not violated. Alternatively, the State argues that any error in not allowing Brodsky to file a limited scope appearance in the section 116-3 action was harmless because defendant's section 116-3 motion was meritless.

¶ 24 Defendant responds that the State has taken inconsistent positions on this issue, noting that the State raises for the first time on appeal the question of whether private counsel Brodsky complied with Rule 13. Because the State did not raise the issue in the circuit court, on appeal, or in its petition for leave to appeal, defendant maintains that "there is no factual basis for the State's argument [on Rule 13] and it should be considered forfeited." Defendant also disagrees with the State's characterization of the appellate court's holding that the court established a constitutional right to a limited appearance under Rule 13(c)(6). Defendant posits that, instead, the appellate court found that his right to retain private counsel of his choice derives from his constitutional right to due process under *Powell*. Last, defendant argues that harmless error analysis is inapplicable to his claim that the trial court denied him his due process right to retain private counsel.

¶ 25 We review *de novo* the question of whether defendant was denied his due process right to be represented by privately retained counsel under *Powell* because it involves a question of law. *People v. Guzman*, 2015 IL 118749, ¶ 13. We also review *de novo* a circuit court's ruling on a section 116-3 motion seeking DNA testing. *People v. Stoecker*, 2014 IL 115756, ¶ 21. Similarly, to the extent the parties' arguments require construction of this court's Rule 13(c)(6), it is subject to *de novo* review and the principles generally applicable to statutory construction. *People v. Salem*, 2016 IL 118693, ¶ 11.

¶ 26 Initially, we address defendant's argument on forfeiture. The State acknowledges, and we agree, that the State has not advanced a consistent argument in the courts below. For the first time on appeal to this court, the State raises defendant's lack of compliance with Rule 13(c)(6). We note, however, that forfeiture is an admonishment to the parties but not a limitation on this court's jurisdiction. *People v. Robinson*, 223 Ill. 2d 165, 174 (2006). Even when an issue is not specifically identified in a petition for leave to appeal, we may choose to review the issue when it is "inextricably intertwined" with matters properly before the court. (Internal quotation

marks omitted.) *People v. Peterson*, 2017 IL 120331, ¶ 67. In our view, those circumstances exist here. We will, therefore, review the merits of the State's argument regardless of any forfeiture.

¶ 27    Because it is central to both parties' arguments and the appellate court's decision, we first consider the United States Supreme Court's decision in *Powell*, 287 U.S. 45. In *Powell*, several male defendants were charged with the rape of two female victims on a train. Less than a month after the alleged incident occurred, the state trial court conducted three separate jury trials that lasted a single day. The juries convicted all of the defendants of rape and imposed the death penalty on the defendants. *Powell*, 287 U.S. at 49-50.

¶ 28    Although the record in *Powell* appeared to show some effort, albeit unsuccessful, to procure counsel for the defendants prior to trial, no counsel was ever appointed or obtained by any of the defendants for pretrial proceedings. *Powell*, 287 U.S. at 57. On the morning of the jury trials, two attorneys appeared and offered to help defendants during trial, but their efforts were not particularly meaningful. See *Powell*, 287 U.S. at 58 (concluding that the defendants "were not accorded the right of counsel in any substantial sense" under the circumstances of the case).

¶ 29    After surveying the historical jurisprudence on the development of a defendant's right to counsel, the *Powell* Court recognized a fundamental due process right to the aid of counsel in the underlying state capital case, including during the notice and hearing stages. *Powell*, 287 U.S. at 67-68. The Court explained that an individual's due process right during a hearing "has always included the right to the aid of counsel when desired and provided by the party asserting that right." *Powell*, 287 U.S. at 68. In pertinent part, the Court stated:

> "If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense." *Powell*, 287 U.S. at 69.

With these principles in mind, the Court determined that "the failure of the trial court to give [the defendants] reasonable time and opportunity to secure counsel was a clear denial of due process." *Powell*, 287 U.S. at 71. Because the defendants faced capital punishment, the Court further determined that the due process protections of the fourteenth amendment required appointment of counsel. *Powell*, 287 U.S. at 71. Ultimately, the *Powell* Court reversed the trial court's judgments and remanded the matters to the trial court for further proceedings. *Powell*, 287 U.S. at 73.

¶ 30    Several years later, the United States Supreme Court relied, in large part, on *Powell* in its landmark decision in *Gideon v. Wainwright*, 372 U.S. 335, 343-45 (1963), that held the states were required to provide appointed counsel to all indigent defendants facing felony criminal charges pursuant to the constitutional guarantees of the sixth and fourteenth amendments. The Court in *Gideon* described *Powell* as recognizing the " 'fundamental character' " of " 'the right to the aid of counsel.' " *Gideon*, 372 U.S. at 342-43 (quoting *Powell*, 287 U.S. at 68).

¶ 31    Although this case does not involve a criminal prosecution or defendant's right to appointed counsel, *Powell* is relevant because it generally recognized a due process right for civil defendants to obtain privately retained counsel of their choice. *Powell*, 287 U.S. at 69; see also *Guajardo-Palma v. Martinson*, 622 F.3d 801, 803 (7th Cir. 2010) (explaining that "*Powell* was a criminal case, but the decision was based on the due process clause rather than

the Sixth Amendment \*\*\*, and its logic embraces civil litigation."); *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1117 (5th Cir. 1980) (citing *Powell* to conclude that "the Supreme Court has indicated in its criminal decisions that the right to retain counsel in civil litigation is implicit in the concept of fifth amendment due process").

¶ 32    Here, as the parties agree and the appellate court determined (2017 IL App (3d) 150861, ¶ 11), a section 116-3 action is civil in nature and independent from any other type of collateral postconviction action. See *People v. Savory*, 197 Ill. 2d 203, 210 (2001) (explaining that a section 116-3 motion "seeks to initiate a separate proceeding, independent of any claim for post-conviction or other relief"). Thus, *Powell* applies to defendant's choice of private counsel in the section 116-3 action. *Guajardo-Palma*, 622 F.3d at 803; *Potashnick*, 609 F.2d at 1117.

¶ 33    We note, however, that the due process right to choice of counsel under *Powell* is not absolute. *Powell* determined that a due process violation occurs only when a state or federal court arbitrarily refuses to hear from privately retained counsel in a criminal or civil case. *Powell*, 287 U.S. at 69. Implicitly, then, *Powell* allows the trial court discretion to limit or otherwise constrain the due process right to choice of counsel as long as the court does not act arbitrarily. See also *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) (in the context of the sixth amendment right to counsel of choice, reaffirming the Court's "previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them"); *Wheat v. United States*, 486 U.S. 153, 159 (1988) (recognizing that "[t]he Sixth Amendment right to choose one's own counsel is circumscribed in several important respects").

¶ 34    In addition, "[t]he judicial article of the Illinois Constitution vests this court with general administrative and supervisory authority over all the courts." *Peterson*, 2017 IL 120331, ¶ 29 (citing Ill. Const. 1970, art. VI, § 16). Thus, the Illinois Constitution " 'clearly empowers this court to promulgate procedural rules to facilitate the judiciary in the discharge of its constitutional duties.' " *Peterson*, 2017 IL 120331, ¶ 29 (quoting *O'Connell v. St. Francis Hospital*, 112 Ill. 2d 273, 281 (1986)). Generally, this court requires strict compliance with our rules (*Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 116 (2004)), and we presume that the rules " 'will be obeyed and enforced as written.' " *People v. Houston*, 226 Ill. 2d 135, 152 (2007) (quoting *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995)). In other words, requiring compliance with this court's rules is not arbitrary.

¶ 35    In this case, defendant's privately retained counsel, Brodsky, made an oral request for leave to file a limited scope appearance under Rule 13(c)(6) in defendant's pending section 116-3 action. As we explain next, though, Brodsky's request failed completely to comply with the requirements of that rule.

¶ 36    Illinois Supreme Court Rule 13(c)(6) (eff. July 1, 2013) allows an attorney to enter a "limited scope appearance on behalf of a party in a civil proceeding pursuant to Rule of Professional Conduct 1.2(c) when the attorney has entered into a written agreement with that party to provide limited scope representation." See also Ill. R. Prof'l Conduct (2010) R. 1.2(c) (eff. Jan. 1, 2016) (permitting lawyer to "limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent").

¶ 37    The rule mandates that the attorney "shall file a Notice of Limited Scope Appearance, in the form attached to this rule, identifying each aspect of the proceeding to which the limited

scope appearance pertains." Ill. S. Ct. R. 13(c)(6) (eff. July 1, 2013).[1] In turn, that form, titled "Form for Limited Scope Appearance in Civil Action," includes fields for (1) a case caption identifying the cause of action involving the limited scope appearance, (2) the attestations of the attorney and client that they have entered into a written agreement on limited scope representation, and (3) the specific matters that the appearance is limited to, including any discrete issues within the proceeding. Ill. S. Ct. R. 13 (eff. July 1, 2013). Both the attorney and the client must sign the form.

¶ 38 The record demonstrates that Brodsky's oral request for a limited scope appearance at the hearing on defendant's *pro se* section 116-3 motion did not comply with *any* part of Rule 13(c)(6)'s carefully detailed requirements. Brodsky did not present or otherwise file the mandatory form notice of limited scope appearance. Nor did Brodsky represent that he and defendant had entered into a written agreement to provide limited scope representation. In fact, Brodsky's statements at the hearing failed to articulate on what limited part of the section 116-3 action he intended to represent defendant.

¶ 39 Based on this record, we necessarily conclude that the trial court's decision to deny Brodsky's oral request for a limited scope appearance under Rule 13(c)(6) was proper. Although the trial court did not address Brodsky's compliance with Rule 13(c)(6), we may affirm the circuit court on any basis in the record. *People v. Dinelli*, 217 Ill. 2d 387, 403 (2005). Accordingly, we reject the appellate court's conclusion that the trial court's denial of Brodsky's request to enter a limited scope appearance on defendant's section 116-3 motion was arbitrary and violated defendant's due process rights under *Powell*. 2017 IL App (3d) 150861, ¶ 14. In short, there was no *Powell* violation in this case because Brodsky made no attempt whatsoever to comply with Rule 13(c)(6) when he sought to enter a limited scope appearance. Because we find no *Powell* violation, we do not need to address the State's alternative argument on harmless error.

¶ 40 Although no *Powell* violation occurred, we believe this cause should be remanded for further proceedings in the circuit court. The record shows that the State and the trial court made inaccurate statements when discussing the nature of defendant's section 116-3 action. Both the State and the court appeared to view defendant's section 116-3 action as an extension, or part, of defendant's *pro se* petition seeking relief under the Post-Conviction Hearing Act. This, of course, is incorrect. A motion seeking DNA testing under section 116-3 "seeks to initiate a separate proceeding, independent of any claim for post-conviction or other relief." *Savory*, 197 Ill. 2d at 210.

¶ 41 In addition, the exact nature of Brodsky's intentions on representing defendant is not clear. Before this court, defendant does not contest the State's position that Brodsky failed to comply with Rule 13(c)(6), but he argues that "Brodsky essentially attempted to enter a general appearance on [defendant's section 116-3] motion." Defendant asserts that Brodsky intended to represent defendant on the entire section 116-3 action, and he claims that Brodsky referred to the representation as "limited scope" only because Brodsky did not plan to represent defendant on the pending postconviction petition. Arguably, parts of the record support

---

[1]Amendments to Rule 13 in 2017 moved the form to an appendix for article I of the rules but did not change the form's content. The amendments provide that the notice shall be "prepared by utilizing, or substantially adopting the appearance and content of, the form provided in the Article I Forms Appendix." Ill. S. Ct. R. 13(c)(6) (eff. July 1, 2017).

defendant's characterization of Brodsky's position in the circuit court. Nonetheless, the record also contains several unambiguous statements by Brodsky that he intended to enter a "limited scope appearance" under Rule 13.

¶ 42 Ultimately, as the State contends, regardless of whether Brodsky intended to enter a limited scope appearance or a general appearance, the record shows that Brodsky failed to do either correctly. See *People v. Glasper*, 234 Ill. 2d 173, 189 (2009) (reiterating that "the rules of this court are not mere suggestions" and explaining that our rules should be followed because they "have the force of law"); see also Ill. S. Ct. R. 13 (eff. July 1, 2013) (generally detailing appearances and withdrawals by counsel). What is equally clear, however, is that Brodsky was willing to represent defendant on his section 116-3 motion, even if the capacity of his intended representation cannot be definitively ascertained from the record.

¶ 43 Because there was confusion on the nature of a section 116-3 action in the circuit court and Brodsky's intentions about the scope of his representation of defendant are in dispute, we believe a remand for further proceedings and clarification is warranted. See *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶¶ 53-56 (remanding for new proceedings in the circuit court when, in relevant part, "the record demonstrates that the lower courts and the parties were not clear on the standards governing [the] proceedings"). Thus, in the exercise of our supervisory authority, we vacate the circuit court's ruling that denied defendant's *pro se* motion seeking DNA testing under section 116-3. We remand the matter to the circuit court for further proceedings on defendant's motion and to provide defendant with the opportunity, if he so desires, to retain private counsel of his choice in compliance with this court's rules. We express no opinion on the merits of defendant's section 116-3 motion.

¶ 44 CONCLUSION

¶ 45 We reverse the appellate court's judgment. In the exercise of our supervisory authority, we vacate the circuit court's decision denying defendant's *pro se* motion for DNA testing under section 116-3. We remand this cause to the circuit court for further proceedings as explained in this opinion.

¶ 46 Appellate court judgment reversed.
¶ 47 Circuit court judgment vacated; cause remanded with directions.