NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 240660-U

NO. 4-24-0660

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 15, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JAMES SNOW, | ) | No. 99CF1016 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Kevin D. Tippey, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding the trial court's denial of defendant's third motion for postconviction forensic testing after an evidentiary hearing was not manifestly erroneous.

¶ 2    Defendant, James Snow, appeals the trial court's judgment denying his third motion for postconviction forensic testing under section 116-3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/116-3 (West 2022)). For the reasons that follow, we affirm.

¶ 3                    I. BACKGROUND

¶ 4                    A. Murder of William Little

¶ 5    On March 31, 1991, William Little was shot to death while working at a gas station in Bloomington. His body was discovered behind the counter, and the drawer from the cash register

was missing.

¶ 6                                    B. Criminal Charges

¶ 7        In September 1999, a grand jury charged defendant with three counts of first degree murder (Ill. Rev. Stat. 1991, ch. 38, ¶¶ 9-1(a)(1), (a)(2), (a)(3)) for the death of Little.

¶ 8                                       C. Jury Trial

¶ 9        In January 2001, a jury trial was held over the course of nine days. The evidence presented at the trial has been discussed at length in prior dispositions from this court and the federal courts, cited below. To summarize, two witnesses testified about the person they saw exiting the gas station around the time a silent alarm was triggered. An officer who first arrived at the scene also testified. The defense highlighted discrepancies in the testimony of the eyewitnesses and the officer. Twelve witnesses testified to defendant making inculpatory statements to them or in their presence. Defendant denied making any of these statements, and the defense presented evidence that many of these witnesses had criminal histories and selfish reasons for testifying. Defendant and his wife testified they were home together the entire night of the murder. The jury learned defendant's wife testified to the grand jury that it was possible defendant had left at some point that evening. The jury also learned through the testimony of officers that defendant attempted to elude arrest, repeatedly asked about the homicide investigation, and inquired whether he could receive leniency in exchange for information he had about the murder. Based upon the evidence presented, the jury found defendant guilty of first degree murder on all counts. He was later sentenced to terms of natural life in prison.

¶ 10                                      D. Direct Appeal

- 2 -

¶ 11        Defendant appealed his convictions and sentences. On appeal, defendant argued (1) the trial court erred by not appointing him new counsel for a hearing on his ineffective-assistance-of-counsel claims, (2) the court erred by not allowing him to present expert testimony regarding eyewitness identification, (3) the court erred in admitting several pieces of evidence, (4) the prosecutor made several improper remarks during her closing arguments, (5) the court erred in giving an accountability instruction, (6) the State failed to prove him guilty beyond a reasonable doubt, (7) he was denied the effective assistance of counsel, and (8) the court erred in sentencing him to natural life in prison. This court vacated defendant's convictions and sentences on the knowing-murder and felony-murder counts because defendant could only stand convicted of one murder for Little's death (see *People v. Cardona*, 158 Ill. 2d 403, 412 (1994)) and affirmed defendant's conviction and sentence for intentional murder in all other respects. *People v. Snow*, No. 4-01-0435 (Aug. 20, 2004) (unpublished order under Illinois Supreme Court Rule 23). The Illinois Supreme Court denied defendant's petition for leave to appeal. *People v. Snow*, 212 Ill. 2d 549 (2004).

¶ 12                              E. Collateral Attacks

¶ 13        Defendant pursued a series of collateral attacks against his conviction and sentence. In May 2004, defendant filed a postconviction petition, which was later advanced to the second stage of postconviction proceedings. In April 2008, the Exoneration Project began representing defendant, which has continued to this day. In April 2011, the trial court dismissed defendant's amended postconviction petition on motion of the State. Defendant appealed the dismissal, and this court affirmed. *People v. Snow*, 2012 IL App (4th) 110415, ¶ 74. This court specifically

rejected defendant's arguments that the trial court erred by dismissing his (1) actual-innocence claim, (2) ineffective-assistance-of-counsel claim, (3) claim under *Brady v. Maryland*, 373 U.S. 83 (1963), (4) other due-process claims, and (5) cumulative-error claim. *Snow*, 2012 IL App (4th) 110415, ¶¶ 27, 32, 44, 53, 56. The Illinois Supreme Court denied defendant's petition for leave to appeal. *People v. Snow*, No. 114143 (May 30, 2012).

¶ 14 In May 2013, defendant filed a motion for leave to file a successive postconviction petition, asserting claims based on alleged newly discovered evidence. In January 2014, the trial court denied defendant leave to file a postconviction petition. Defendant appealed the denial, and this court affirmed. *People v. Snow*, 2015 IL App (4th) 140721, ¶ 43. This court specifically rejected defendant's arguments that the trial court erred by denying him leave to pursue actual-innocence and *Brady* claims. *Id.* ¶¶ 24, 30, 36, 41. The Illinois Supreme Court denied defendant's petition for leave to appeal. *People v. Snow*, No. 119495 (Sept. 30, 2015).

¶ 15 Also in May 2013, defendant filed in federal court a petition for writ of *habeas corpus*, alleging ineffective-assistance-of-counsel and *Brady* claims, as well as a claim of cumulative error. The petition was stayed until the resolution of defendant's motion for leave to file a successive postconviction petition. In December 2016, the federal district court denied defendant's *habeas corpus* petition. *Snow v. Pfister*, 240 F. Supp. 3d 854, 860 (N.D. Ill. 2016). Defendant appealed the denial, and the federal circuit court affirmed. *Snow v. Pfister*, 880 F.3d 857, 863 (7th Cir. 2018). The United States Supreme Court denied defendant's petition for writ of *certiorari*. *Snow v. Nicholson*, 584 U.S. 1034 (2018).

¶ 16 F. Prior Section 116-3 Motions for Testing

- 4 -

¶ 17        While pursuing his collateral attacks against his conviction and sentence, defendant sought forensic testing under section 116-3 of the Code on evidence secured in relation to his trial. In September 2008, defendant filed his first section 116-3 motion for testing (725 ILCS 5/116-3 (West 2008)), which he later supplemented. Defendant's motion sought DNA testing on (1) blood found on the floor near the gas station counter, (2) bullets recovered from Little's body, (3) clothing Little was wearing at the time of his death, and (4) fingerprints taken from the gas station's entrance door. Defendant later elected to proceed with only his request for testing on the blood. In June 2009, the trial court entered an agreed order granting defendant's motion to the extent it requested DNA testing on the blood. The testing results were issued in October 2009 and indicated a human DNA profile was identified in the blood which matched the DNA profile of Little and excluded the DNA profile of defendant.

¶ 18        In March 2011, defendant filed a second section 116-3 motion for testing (725 ILCS 5/116-3 (West 2010)). Defendant's motion sought ballistics testing on the bullets recovered from Little's body. Noting there was a string of gas station robberies in Bloomington around the time of Little's murder, defendant asserted the requested testing could provide evidence of the firearm used to kill Little and, therefore, the true perpetrator of the offense. In May 2011, the trial court denied defendant's motion without an evidentiary hearing. Defendant appealed the denial, and this court affirmed. *Snow*, 2012 IL App (4th) 110415, ¶ 74. This court specifically rejected defendant's argument that the trial court erred by denying his motion, finding defendant had not shown the requested testing had the scientific potential to produce new, noncumulative evidence materially relevant to his claim of actual innocence. *Id.* ¶¶ 65, 72. We explained:

"We find this case before us more in line with [*People v. Savory*, 197 Ill. 2d 203 (2001),] than [*People v. Pursley*, 407 Ill. App. 3d 526 (2011)]. Here, the State did not rely on ballistics evidence to support defendant's guilt. Thus, as in *Savory*, any test results would not eliminate a major part of the State's case against defendant. In contrast to *Pursley*, where a gun from the defendant's apartment was recovered and bullet casings and fragments were tested and compared, no gun was recovered in this case. Any new evidence would not disprove a gun used by defendant to shoot Little was not the murder weapon. Thus, any test result would not significantly advance defendant's claim of actual innocence. Moreover, defendant's claim that ballistics testing could show some unknown gun was used in some undocumented Bloomington gas station robberies occurring after he was convicted and thereby identify the 'true perpetrator of this crime' is wholly speculative. Accordingly, we find the trial court did not err in denying defendant's section 116-3 motion." *Id.* ¶ 72.

As indicated, the Illinois Supreme Court denied defendant's petition for leave to appeal. *Snow*, No. 114143.

¶ 19                    G. Instant Section 116-3 Motion for Testing

¶ 20        In May 2013, defendant filed a third section 116-3 motion for testing (725 ILCS 5/116-3 (West 2012)), which is the subject of this appeal. Following extensive discovery, defendant filed supplements to his motion in December 2015 and August 2023. Defendant's motion sought DNA testing on (1) the blood found on the floor near the gas station counter, (2) the

bullets recovered from Little's body, (3) the clothing Little was wearing at the time of his death, and (4) the fingerprints taken from the gas station's entrance door. Defendant's motion also sought fingerprint testing on the fingerprints taken from the gas station's entrance door. Defendant, noting the absence of forensic evidence connecting him to the murder of Little and highlighting purported evidence of a struggle between Little and the perpetrator as well as evidence of the cleanliness of the gas station, asserted the requested testing could provide evidence of a third-party suspect and, therefore, the true perpetrator of the offense. As for the purported evidence of a struggle, defendant cited (1) an autopsy report indicating Little had contusions on his right forearm and a hematoma on the frontal bone of his skull, (2) testimony that the drawer from the cash register was missing and the stool behind the counter was laid over on its side, and (3) police reports indicating several members of Little's family conveyed Little had stated he would have put up a fight if subject to a robbery. As for the evidence of the cleanliness of the gas station, defendant cited 2015 affidavits of employees who averred the gas station was kept clean in 1991, including one employee who averred the gas station's entrance door was cleaned at least every other day.

¶ 21 In January 2016, the State filed a response, objecting to defendant's third section 116-3 motion for testing, which it supplemented in October 2023. Amongst other things, the State argued defendant had not shown additional DNA testing on the blood would provide a reasonable likelihood of more probative results. In so arguing, the State asserted the evidence did not support defendant's theory that a struggle occurred prior to Little's murder. The State also argued defendant had not shown the results of the requested testing would be materially relevant to his assertion of actual innocence.

¶ 22 In February 2024, the trial court conducted an evidentiary hearing on defendant's third section 116-3 motion for testing. Following opening statements, defendant presented testimony from three expert witnesses, all of whom testified in support of the requested testing, as well as several exhibits. The State, in turn, cross-examined defendant's witnesses and presented several exhibits. The hearing concluded with closing arguments, during which the State challenged the credibility of defendant's witnesses and their opinions. The court then took the matter under advisement.

¶ 23 With respect to the requested DNA testing on the blood, Deanna Lankford, a qualified expert in DNA testing and analysis, opined additional DNA testing was warranted given the advancements in testing since 2009. She explained the testing had become more sensitive and could identify another DNA contributor that was unable to be detected in 2009. Lankford acknowledged the report from the prior testing did not provide any indication of the discovery of a second DNA profile. She believed a second DNA profile may be present based upon evidence of a struggle between Little and the perpetrator. Lankford explained:

> "There was a mention in the autopsy report of contusions on the right forearm of the victim. They also mentioned, I believe this was in the crime scene investigator's report, that there was a stool behind the counter that was laid over on its side, maybe where it had possibly been knocked over. And then there was the cash register drawer bin was missing, and so I felt possibly that occurred during an altercation or a struggle."

Lankford additionally indicated she believed there might have been a struggle based upon a

mention in the autopsy report of a hematoma on the frontal bone of Little's skull. She acknowledged the autopsy report did not provide any indication of the age of the injuries to Little's forearm and skull. When asked if she had experience reviewing records to determine if a struggle may have taken place, Lankford testified, "I have no training in determining whether a struggle took place. I just base that on what I read in the files."

¶ 24　　　　In March 2024, the trial court entered a written order denying defendant's third section 116-3 motion for testing. The court based its ruling upon its determination that defendant had not shown the results of the requested testing would be materially relevant to his assertion of actual innocence. The court found:

> "The inculpatory statements made by [defendant] and the eyewitness testimony of [defendant] fleeing the scene was the core of the State's evidence at trial. The testing requested here, if granted, would not be exculpatory in nature based upon the trial evidence."

Additionally, the court found, in part, (1) "[n]o evidence of a struggle or any other reason to believe that the DNA returned from the blood would be co-mingled with any other person's DNA" and (2) "[a]ll of the fingerprints were located on the glass of the entry/exit of the gas station which would be used by almost anyone entering the building."

¶ 25　　　　This appeal followed.

¶ 26　　　　　　　　　　　　　　　II. ANALYSIS

¶ 27　　　　On appeal, defendant argues the trial court erred when it denied his third section 116-3 motion for postconviction forensic testing. Specifically, defendant asserts his motion should

have been granted because he satisfied the statutory requirements set forth in section 116-3 of the Code. The State disagrees, maintaining the court correctly denied defendant's motion.

¶ 28 There is no constitutional right to postconviction forensic testing; rather, access to it is a matter of legislative grace. *People v. Grant*, 2022 IL 126824, ¶ 26 (citing *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52, 72-74 (2009)). In that regard, the Illinois General Assembly enacted a statutory right to postconviction forensic testing, provided in section 116-3 of the Code. An action for postconviction forensic testing under section 116-3 is civil in nature and independent from any other type of postconviction action. *People v. Gawlak*, 2019 IL 123182, ¶ 32.

¶ 29 Section 116-3 of the Code (725 ILCS 5/116-3 (West 2022)) states, in pertinent part, as follows:

"(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint, Integrated Ballistic Identification System, or forensic DNA testing, including comparison analysis of genetic marker groupings of the evidence collected by criminal justice agencies pursuant to the alleged offense, to those of the defendant, to those of other forensic evidence, and to those maintained under subsection (f) of Section 5-4-3 of the Unified Code of Corrections, on evidence that was secured in relation to the trial *** which resulted in his or her conviction, and:

(1) was not subject to the testing which is now requested at the time of trial; or

(2) although previously subjected to testing, can be subjected to additional testing utilizing a method that was not scientifically available at the time of trial that provides a reasonable likelihood of more probative results.

Reasonable notice of the motion shall be served upon the State.

(b) The defendant must present a *prima facie* case that:

(1) identity was the issue in the trial *** which resulted in his or her conviction; and

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.

(c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:

(1) the result of the testing has the scientific potential to produce new, noncumulative evidence *** materially relevant to the defendant's assertion of actual innocence ***, even though the results may not completely exonerate the defendant ***; and

(2) the testing requested employs a scientific method generally accepted within the relevant scientific community."

¶ 30    Thus, for a defendant to be entitled to postconviction forensic testing on evidence

- 11 -

secured in relation to his or her trial under section 116-3, he or she must show the following: (1) identity was at issue in the trial (*id.* § 116-3(b)(1)); (2) "the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect" (*id.* § 116-3(b)(2)); (3) the evidence to be tested (a) "was not subject to the testing which is now requested at the time of trial" or (b) "although previously subjected to testing, can be subjected to additional testing utilizing a method that was not scientifically available at the time of trial that provides a reasonable likelihood of more probative results" (*id.* § 116-3(a)); (4) "the testing requested employs a scientific method generally accepted within the relevant scientific community" (*id.* § 116-3(c)(2)); and (5) "the result of the testing has the scientific potential to produce new, noncumulative evidence *** materially relevant to the defendant's assertion of actual innocence ***, even though the results may not completely exonerate the defendant." *Id.* § 116-3(c)(1).

¶ 31     When reviewing a trial court's ruling on a section 116-3 motion, our courts have primarily used the *de novo* standard of review. See, *e.g.*, *Gawlak*, 2019 IL 123182, ¶ 25; *People v. Stoecker*, 2014 IL 115756, ¶ 21; *People v. Shum*, 207 Ill. 2d 47, 65 (2003). This is because most appeals involve rulings made without an evidentiary hearing. See, *e.g.*, *Gawlak*, 2019 IL 123182, ¶ 17; *Stoecker*, 2014 IL 115756, ¶ 15; *Shum*, 207 Ill. 2d at 55; see also *People v. Rozo*, 2012 IL App (2d) 100308, ¶ 4 ("We review *de novo* the trial court's ruling on a motion brought under section 116-3, as the court's decision is based on its assessment of the pleadings and trial transcripts as opposed to the credibility of any witnesses.").

¶ 32     In 2011, this court considered the standard of review to be used when a trial court's

ruling on a section 116-3 motion follows an evidentiary hearing. In *People v. Slover*, 2011 IL App (4th) 100276, ¶ 13, this court found the application of the *de novo* standard would be inappropriate in that case because the trial court heard testimony on the defendant's motion and based its ruling, in part, on its assessment of the witnesses' credibility. In lieu of the *de novo* standard, this court found the application of the manifestly-erroneous standard would be appropriate, reasoning that the review of a section 116-3 proceeding in which an evidentiary hearing has been held is analogous to that of a third-stage postconviction hearing. *Id.* ¶ 16. Accordingly, this court adopted the manifestly-erroneous standard of review. *Id.*

¶ 33    Without addressing this court's decision in *Slover*, defendant maintains we should review the trial court's ruling on his third section 116-3 motion *de novo*. In support, defendant cites *People v. Gibson*, 357 Ill. App. 3d. 480 (2005). In *Gibson*, this court reviewed *de novo* a trial court's ruling on a section 116-3 motion that followed a hearing where the defendant testified. *Id.* at 484-85. However, the applicable standard of review was apparently not in dispute in that case (see *id.* at 485), and, moreover, the decision predated this court's decision *Slover*. *Gibson*, therefore, is distinguishable, and defendant does not challenge our decision in *Slover*.

¶ 34    As the State argues, and consistent with *Slover*, we find the application of the manifestly-erroneous standard of review is appropriate in this case. The trial court's ruling on defendant's section 116-3 motion followed an evidentiary hearing and was based, in part, on findings of fact. See *Snow*, 2012 IL App (4th) 110415, ¶ 63 ("On appeal, a trial court's ruling on a motion for testing under section 116-3 *without an evidentiary hearing* is reviewed *de novo*." (Emphasis added.)); *People v. English*, 2013 IL App (4th) 120044, ¶ 14 ("We review *de novo* a

- 13 -

trial court's ruling on a motion for testing under section 116-3 *without an evidentiary hearing*." (Emphasis added.)). Accordingly, we will apply the manifestly-erroneous standard.

¶ 35    "Applying the manifestly erroneous standard of review, we will affirm the trial court's judgment unless it is manifestly erroneous." *Slover*, 2011 IL App (4th) 100276, ¶ 17. "A ruling is manifestly erroneous only if it contains error that is clearly evident, plain, and indisputable." (Internal quotation marks omitted.) *Id.*

¶ 36    In conducting our review in this case, we must initially address an issue with the specific evidence upon which defendant sought testing. On appeal, defendant argues he is entitled to DNA and fingerprint testing on fingerprints purportedly discovered on the cash register. He goes so far as to fault both the State and the trial court for not responding to these requests. The problem, however, is these requests were not presented to the court. Defendant's motion sought DNA and fingerprint testing on fingerprints taken from the gas station's entrance door. The evidentiary hearing likewise focused on testing of the fingerprints taken therefrom. While there may have been some dispute at the hearing as to the exact number of fingerprints taken from the door, there was no dispute as to where those fingerprints were taken. Indeed, the court's order indicates it was ruling only with respect to requests for testing on fingerprints taken from the door. On the record presented, we find defendant's requests for DNA and fingerprint testing on fingerprints purportedly discovered on the cash register are not properly before this court and, therefore, we will not consider them further.

¶ 37    As for the evidence upon which plaintiff actually sought testing before the trial court, it is undisputed defendant has shown identity was the issue at trial and the evidence has a

- 14 -

sufficient chain of custody. Also not disputed is the fact the requested DNA and fingerprint testing employ scientific methods generally accepted within the relevant scientific communities. And last, it is undisputed the evidence to be tested, with the exception of the blood, was not subject to the testing which is now requested at the time of trial, or, although previously subjected to testing, can be subject to additional testing utilizing a method that was not scientifically available at the time of trial that provides a reasonable likelihood of more probative results.

¶ 38　　　　Therefore, the first issue in this appeal centers on whether defendant has shown the blood, although subjected to testing in 2009, can be subjected to additional testing utilizing a method that was not scientifically available at the time of trial "that provides a reasonable likelihood of more probative results." 725 ILCS 5/116-3(a)(2) (West 2022); see *People v. Carroll*, 2024 IL App (4th) 231207, ¶ 52 (noting the appellate court may affirm the judgment below on any basis supported by the record). The State maintains defendant did not satisfy this statutory requirement. On this issue, we are guided by our supreme court's decision in *Stoecker*.

¶ 39　　　　In *Stoecker*, 2014 IL 115756, ¶ 24, our supreme court explained section 116-3(a) "imposes a more stringent obligation on defendants seeking re-testing of evidence." A defendant seeking retesting of evidence must show the requested testing (1) was not scientifically available at the time of trial and (2) will provide a reasonable likelihood of more probative results than the previous testing. *Id.* (citing 725 ILCS 5/116-3(a)(2) (West 2008)). "The analysis in subsection (a)(2) thus involves comparing the respective probative values of the two tests." *Id.* ¶ 26.

¶ 40　　　　After examining defendant's motion and the evidence presented at the evidentiary hearing, we find defendant has not shown additional DNA testing on the blood has the potential to

produce more probative results than the previous DNA testing to which it was subjected. To begin with, the testing in 2009 indicated a human DNA profile was identified which matched the DNA profile of Little and excluded the DNA profile of defendant. Defendant believes another human DNA profile could be found in the blood with the advancements in DNA testing. Defendant's belief stems from his theory that there was a struggle between Little and the perpetrator. As the trial court found, the evidence does not support defendant's theory. The autopsy report provides no indication of when Little sustained the injuries to his forearm and skull. Neither the turned over stool, nor the missing cash register drawer, is indicative of a struggle, especially given the absence of any other evidence from the crime scene—a gas station convenience store—of a struggle. While Lankford indicated she relied upon this evidence in reaching her recommendation for additional DNA testing, she made it clear she had "no training in determining whether a struggle took place." Finally, Little's statements, conveyed to his family, of how he would have acted if subject to a robbery are just that: statements. The evidence simply does not support defendant's theory that there was a struggle between Little and the alleged perpetrator. Because defendant has not shown additional DNA testing on the blood has the potential to produce more probative results than the previous testing to which it was subjected, we find the court did not err in denying his motion to the extent it requested said testing.

¶ 41       The next issue in this appeal centers on whether defendant has shown the results of the testing on the fingerprints, bullets, and clothing have the scientific potential to produce new, noncumulative evidence "materially relevant to the defendant's assertion of actual innocence," even though the results may not completely exonerate him. 725 ILCS 5/116-3(c) (West 2022). The

State maintains defendant did not satisfy this statutory requirement. On this issue, we are guided by our supreme court's decision in *Savory*.

¶ 42        In *Savory*, 197 Ill. 2d at 213, our supreme court explained "evidence which is 'materially relevant' to a defendant's claim of actual innocence is simply evidence which tends to significantly advance that claim." The question of whether the evidence at issue satisfies this standard "cannot be determined in the abstract." *Id.* at 214. Rather, it requires an evaluation of the evidence presented at trial and the evidence the defendant seeks to acquire through testing. *Id.*; see *Rozo*, 2012 IL App (2d) 100308, ¶ 4.

¶ 43        As the trial court indicated, the core evidence against defendant at trial came from 2 witnesses who testified about the person they saw exiting the gas station around the time a silent alarm was triggered and 12 witnesses who testified about defendant making inculpatory statements to them or in their presence. The defense challenged the witnesses' testimonies, a challenge which continued throughout defendant's collateral proceedings. Notably, the evidence upon which defendant seeks testing was not used to establish his guilt.

¶ 44        Defendant maintains DNA and fingerprint testing on the fingerprints taken from the gas station's entrance door could significantly advance his claim of actual innocence. We disagree. As the trial court indicated, any identification from DNA or fingerprint testing would simply show a person at some point visited the gas station. Given the evidence presented against defendant and the evidence defendant seeks to acquire through testing, we agree with the trial court's assessment that defendant has not shown a favorable result of the testing would significantly advance his claim of actual innocence.

¶ 45 Defendant also maintains DNA testing on the bullets recovered from Little's body could significantly advance his claim of actual innocence. We disagree. Any identification from DNA testing would simply show a person at some point prior to the shooting touched the bullets used to kill Little. Given the evidence presented against defendant and the evidence defendant seeks to acquire through testing, we agree with the trial court's assessment that defendant has not shown a favorable result of the testing would significantly advance his claim of actual innocence.

¶ 46 And last, defendant maintains DNA testing on Little's clothing could significantly advance his claim of actual innocence. We disagree. Any identification from DNA testing would simply show a person at some point had been in Little's presence. Indeed, defendant has acknowledged DNA from another person could be present on Little's clothing from a person merely speaking with him. Given the evidence presented against defendant and the evidence defendant seeks to acquire through testing, we agree with the trial court's assessment that defendant has not shown a favorable result of the testing would significantly advance his claim of actual innocence.

¶ 47 We note defendant contends, even if he has not shown the requested testing on any single piece of evidence would significantly advance his claim of actual innocence, he has shown the cumulative results from the requested testing has the "potential to be self-reinforcing" and, therefore, would significantly advance his claim of actual innocence. We decline to entertain defendant's contention. First, defendant did not raise this contention in his opening brief. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Additionally, defendant cites no

authority in support of his position, nor does he explain how his contention is supported by the plain language of section 116-3.

¶ 48     We emphasize section 116-3 "does not provide a general means to discover evidence but rather an avenue to test targeted items that have the potential to provide materially relevant evidence as to a defendant's claim of actual innocence." *People v. Barrow*, 2011 IL App (3d) 100086, ¶ 30. The two cases primarily relied upon by defendant in this appeal are distinguishable in that they involve testing on core evidence of guilt in sexual assaults. See, *e.g.*, *People v. Johnson*, 205 Ill. 2d 381, 396-97 (2002) (finding a favorable result from a DNA test on Vitullo kit would significantly advance the defendant's claim he did not assault the victim); *People v. Grant*, 2016 IL App (3d) 140211, ¶ 26 (finding a favorable result from a DNA test on a hair found in the victim's vagina would significantly advance defendant's claim another person had sex with the victim).

¶ 49     In sum, we conclude the trial court's denial of defendant's third motion for postconviction forensic testing after the evidentiary hearing is not manifestly erroneous.

¶ 50                                   III. CONCLUSION

¶ 51     For the reasons stated, we affirm the trial court's judgment.

¶ 52     Affirmed.